406 A.2d 1374

Charles TESLOVICH and Delores Teslovich, his
wife, Appellants,

v.

Lizzie JOHNSON, a/k/a Elizabeth Johnson, James W. Johnson,
Amos A. Shroyer, Ida R. Shroyer, Garfield Shroyer and Rosetta
Alverda Shroyer, and their heirs and assigns, generally, Appellees.

Charles TESLOVICH and Delores Teslovich, his
wife, Appellants,

v.

Amos A. SHROYER, Ida R. Shroyer, Garfield Shroyer and
Rosetta Alverda Shroyer, and their heirs and assigns,
generally, Appellees.

Supreme Court of Pennsylvania.

Argued Sept. 20, 1979.

Decided Oct. 23, 1979.

Ralph K. Barclay, Jr., William M. Radcliffe, Coldren & Coldren, Uniontown, for appellants.

Vincent J. Roskovensky, II, Uniontown, for appellees.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO, LARSEN and FLAHERTY, JJ.

## OPINION

LARSEN, Justice.

This appeal involves two actions to quiet title brought by appellants, Charles and Dolores Teslovich, to establish title to a 29–acre parcel of land purchased from the Fayette County Tax Claim Bureau in 1971. As the actions involve identical questions of law and fact, they were consolidated for trial and appeal.

Rosetta A. Shroyer, the appellee, and her now deceased husband, Garfield Shroyer, resided together on a 15–acre tract of land at Mill Run in Fayette County. The Shroyers owned this parcel and the 29–acre tract of land adjoining it as tenants by the entireties.

In 1968, as a result of marital difficulties, Mrs. Shroyer left the home she shared with her husband and took up a separate residence. The taxes on the two parcels of land became delinquent and, in June of 1970, Mrs. Shroyer went to the Fayette County Tax Claim Bureau to begin payment on the delinquency and notify the Bureau of her change of address to Melcroft, Pennsylvania. Several months later, Mrs. Shroyer moved to Indianhead, Pennsylvania, leaving her forwarding address with the Melcroft Post Office. She subsequently sent a money order to the Fayette County Tax

Claim Bureau with instructions to apply the proceeds to the delinquency. The Bureau, apparently through oversight, applied the money only to the deficiency on the 15–acre parcel and, since the payment made by Mrs. Shroyer exceeded this deficiency, the Bureau sent her an overpayment refund along with the receipt for the monies that had been applied to the deficiency.

Approximately two months later, the Fayette County Tax Claim Bureau mailed a notice of their intention to sell the 29–acre parcel for delinquent taxes to "Garfield and Rosetta Shroyer, Melcroft, Pennsylvania" by registered mail, personal addressee only return receipt requested. The Melcroft postal authorities forwarded this notice to Garfield Shroyer, the first named addressee on the envelope, at the Mill Run address. Mr. Shroyer, who could neither read nor write, received the notice on June 18, 1971 and placed his mark (an "X") on the return receipt. Mr. Shroyer had not communicated with his wife since their separation in 1968, and he did not forward the notice to her or, assuming he learned its contents and import, in any way inform her of the same.

The tax sale was held on October 14, 1971 and, as a result thereof, the Fayette County Tax Claim Bureau deeded the 29–acre tract to appellants, Charles and Dolores Teslovich, in February of 1972. Approximately two years later, the appellants commenced the instant actions to quiet title. Mrs. Shroyer received notice of these actions and, for the first time, learned of the tax sale that had taken place in 1971. She answered the appellants' complaints alleging that the Tax Claim Bureau had not given her proper notice of the tax sale and that it was therefore invalid. The Common Pleas Court of Fayette County held that the notice was sufficient and entered an order quieting title and barring Mrs. Shroyer from asserting any claim or interest in the real estate. After her exceptions to this order were dismissed by the court en banc, Mrs. Shroyer appealed to the Commonwealth Court. The Commonwealth Court, 37 Pa.Cmwlth. 449, 391 A.2d 11, reversed the order of the Fayette County Common Pleas Court and set the tax sale aside. Appellants

then filed a petition for allowance of appeal which was granted by this Court.

■ Section 602 of the Real Estate Tax Sale Law, Act of July 7, 1947, P.L. 1368, art. VI, § 602, *as amended*, 72 P.S. § 5860.602, provides in pertinent part:

". . . notice of the sale shall also be given by the bureau, at least ten (10) days before the date of the sale, by United States registered mail[1], personal addressee only return receipt requested, postage prepaid, *to each owner* as defined by this act . . ." (emphasis supplied)

The question presented by the instant appeal is whether one jointly-addressed notice to tenants by the entireties satisfies these statutory requirements. Appellant urges that the proper interpretation of the critical phrase, "to each owner", is that set forth in *Auritt v. Wheatcroft*, 2 Pa.Cmwlth. 408, 278 A.2d 172 (1971), and its progeny. In that line of cases, the Commonwealth Court held that one notice addressed to both husband and wife who are living together and holding property as tenants by the entireties "conforms to both the spirit and the letter of the law."[2] *Id.*, 2 Pa.Cmwlth. at 413, 278 A.2d at 175. We disagree.

1. This statute was amended by the Act of September 27, 1973, P.L. 268, No. 74, § 6, and "certified mail" was substituted for "registered mail." That amendment is not, however, applicable to the instant case.

2. The Commonwealth Court found the *Auritt v. Wheatcroft* line of cases inapplicable to the instant matter because appellee and her husband were not "living together." Appellants argue that this is of no consequence. They assert that *Auritt v. Wheatcroft* permits a single jointly-addressed notice to tenants by the entireties and that when the tenants are not living together, the notice *is* only insufficient as to the tenant to whom the notice is not sent. Appellants conclude that the appellee may not complain as the notice was mailed to *her* last known address, and denominate the forwarding of the notice to appellee's husband a mail miscarriage which should be borne by the delinquent taxpayer. See *Hess v. Westerwick*, 366 Pa. 90, 76 A.2d 745 (1950). Since we find that *Auritt v. Wheatcroft* incorrectly interpreted the notice required by section 602 of the Real Estate Tax Sale Law for tenants by the entireties, whether living together or not, it is unnecessary to deal with these contentions.

■ The Statutory Construction Act of 1972, Act of December 6, 1972, P.L. 1339, No. 290, § 3, 1 Pa.C.S.A. §§ 1501–1991 (Supp. 1978–79), sets forth rules of construction which, as a general rule, are to be observed in construing the provisions of statutes finally enacted on or after September 1, 1937. See 1 Pa.C.S.A. §§ 1502(a) and 1901. Initially, these rules provide that non-technical words and phrases are to be construed "according to their common and approved usage." 1 Pa.C.S.A. § 1903(a). "Each" is a non-technical word which Webster's Dictionary (unabridged 2nd ed. 1976) defines as "every one of two or more considered or treated distinctly from the rest." The statutory requirement of "notice . . . to each owner" must thus be construed to mean that every owner will be considered and treated as distinct from the others and, consequently, that tenants by the entireties are entitled to separate and individual notice. *Auritt v. Wheatcroft*, supra (Judge Manderino, now Justice Manderino, dissenting).

The rules also provide that "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S.A. § 1921(a). In *Ross Appeal*, 366 Pa. 100, 107, 76 A.2d 749, 753 (1950), this Court stated:

> "The strict provisions of the Real Estate Tax Sale Law were never meant to punish taxpayers who omitted through oversight or error (from which the best of us are never exempt) to pay their taxes. Tax acts were rather meant to protect the local government against wilful, persistent long standing delinquents for whom we hold no brief, and to whom the appellate court decisions have consistently given short shrift."

The instant case amply demonstrates the frustration of legislative purpose which can occur when the notice provisions of section 602 of the Real Estate Tax Sale Law are construed to permit a single notice to tenants by the entireties. Mrs. Shroyer is not, nor is she alleged to be, a "wilful, persistent, long standing delinquent". She went to the Fayette County Tax Claim Bureau of her own initiative,

notified them of her whereabouts, and began making payments on the tax delinquency that had accumulated since the separation from her husband; she continued to mail payments to that Bureau until the Bureau erred and sent her a refund which indicated that she no longer had a tax delinquency; and she asserted her property rights at the first available opportunity after learning of the actions taken by the Bureau and the reasons therefor. To interpret section 602 of the Real Estate Tax Sale Law to permit a single notice to tenants by the entireties is to countenance the taking of a citizen's property under circumstances such as those presented here. Such a taking is completely unrelated to the protection of local government and amounts to no more than a trap for unwary taxpayers.

█  As a consequence, we find that section 602 of the Real Estate Tax Sale Law requires separate and individual notice to each named owner of property; regardless of whether that owner holds in common, in joint, or by the entireties. "The notice provisions of the tax sale statute must be strictly complied with in order to guard against the deprivation of property without due process of law. [citations omitted]." *Chester County Tax Claim Bureau Appeal*, 208 Pa.Super. 384, 387, 222 A.2d 602, 604 (1966). As the notice required by the act was not given in the instant case, the tax sale is invalid and must be set aside. *Ross Appeal*, 366 Pa. 100, 76 A.2d 749 (1950).

█  We recognize that this construction of section 602 may cast clouds upon titles which were obtained at tax sales conducted in accordance with the *Auritt v. Wheatcroft* line of cases, and which were heretofore believed to be clear titles. In order to obviate this problem, today's construction will be given prospective effect only. All *future notices* must, therefore conform to this opinion. We also realize that immediate compliance with today's decision may place an undue burden on tax claim bureaus. We therefore suspend the effect of today's decision (except as applied to the instant case) for a period of 30 days, said 30–day period to commence upon the filing of this opinion.

The order of the Commonwealth Court setting aside the tax sale is affirmed.

ROBERTS, J., filed a concurring and dissenting opinion.

NIX, J., filed a concurring and dissenting opinion.

MANDERINO, J., filed a concurring and dissenting opinion.

ROBERTS, Justice, concurring and dissenting.

While I agree that the Real Estate Tax Sale Law requires separate and individual notice, I would apply this holding to all cases which are pending and not finally litigated on the date of this decision. See *Luskey v. Staffron*, 469 Pa. 377, 380, 366 A.2d 223, 224 (1976) (concurring opinion of Roberts, J., joined by Manderino, J.).

NIX, Justice, concurring and dissenting.

I would affirm the order of the Commonwealth Court, without modification, on the able opinion of Judge Blatt. See *Teslovich v. Johnson*, 37 Pa.Cmwlth. 449, 391 A.2d 11 (1978).

MANDERINO, Justice, concurring and dissenting.

I concur in the result for the reasons stated in my dissenting opinion in *Tax Claim Bureau v. Wheatcroft (Auritt)*, 2 Cmwlth. 408, 415, 278 A.2d 172, 176 (1971):

"I dissent. Herbert and Esther Auritt are two distinct human beings, *each* of whom is an *owner* of the home sold at the tax sale. The record contains no evidence that Herbert and Esther are fused flesh forms animated by a single life spark. I have never met Herbert Auritt or Esther Auritt. I am reasonably confident, however, from the record before us that I can legitimately rely upon the doctrine of judicial notice to accurately conclude that Herbert is an 'each' and Esther is also an 'each'.

Since there are two 'eaches' both of whom are *owners* of the home, the provisions of the Real Estate Tax Law were not followed and the tax sale can not be valid.

According to the Real Estate Tax Sale Law, (Act of July 7, 1947, P.L. 1368; 72 P.S. 5860.602), when a tax sale of property is contemplated, 'notice of the sale shall also be given by the bureau, at least ten (10) days before the date of the sale, by United States registered mail, *personal addressee only*, return receipt requested, postage prepaid, *to each owner* as defined by this act and by posting on the property.'. (Emphasis added.)

The provisions of the law clearly require that the notice be sent to 'personal addressee only' and 'to each owner'. In this case, the letter sent, allegedly notifying the owners of the sale, was addressed to 'Mr. and Mrs. Auritt'. Obviously, the letter here was addressed to two people and compliance with a statute mandating delivery to 'personal addressee only' and to 'each owner' was impossible. Esther and Herbert Auritt held their property as tenants by the entireties. Since there were two owners of the property in question and the statute required that notice of an impending tax sale be sent *to each*, the Tax Claim Bureau failed to comply with the statute by not sending a separate notice of the sale to each owner.

While it is true that tenancies by the entireties occupy a unique position in the realm of estate law, present enlightened social and economic attitudes make it unrealistic for the courts to continue to follow Bracton's maxim: 'Man and wife are as one person, for they are one in flesh and blood.' * It is obvious that man and wife are not one person. They are two distinct beings, who, if they hold property as tenants by the entireties, are two distinct owners of an undivided whole property. As two separate and distinct owners, notice of an impending tax sale of property owned *by each* should be given separately to each. The majority correctly points out that there must be strict compliance with the notice provisions of a tax sale statute.

* The exact authority for Bracton's maxim is not necessary because its validity was attested to for many years in the classroom by Dean Walter A. Rafalko of the New York Law School who always brought to the student's attention that Bracton served as a Judge in the Thirteenth Century."

The Legislature, of course, would be free to change the law and provide that husband and wife are to be treated as one person and notice to either would be sufficient. The Legislature, in other areas of the law, has specifically mandated that owners of undivided interests in property shall be treated as one person but they have not said any such thing in the Real Estate Tax Sale Law.

I would reverse the order of the court below and set aside the tax sale of the property owned by Herbert Auritt and Esther Auritt.

Today's decision gives full effect to the clear legislative mandate. I cannot however agree that today's decision should apply only to future notices. In order to insure that individuals similarly situated to the appellants herein will be treated equally, this decision should apply to all cases which are pending and not finally litigated on the date of this decision. *See Luskey v. Staffron,* 469 Pa. 377, 366 A.2d 223, 224 (1976) (Concurring Opinion of Roberts J., joined by Manderino, J.). It should also apply in situations where there is no pending litigation on the date of this decision and timely legal action is taken. The applicability of this decision in such a manner would not unreasonably cast a cloud on property titles.