53 Pa. Commonwealth Ct. 423 (1980)
In Re: Tax Claim Bureau, Sale of Property for Delinquent Taxes. Doris W. Kasuba Stephens, Appellant.
No. 1919 C.D. 1979.
Commonwealth Court of Pennsylvania.
Argued May 8, 1980.
August 11, 1980.
*424 Argued May 8, 1980, before Judges MENCER, CRAIG and MacPHAIL, sitting as a panel of three.
Harry J. Cancelmi, Jr., Thompson and Baily, for appellant.
James Hook, with him A.J. Marion, for appellee.
OPINION BY JUDGE MacPHAIL, August 11, 1980:
(Appellant) Doris W. Kasuba Stephens, formerly Doris W. Kasuba, appeals from an order of the Court of Common Pleas of Greene County which confirmed absolutely the tax sale of five separate parcels of land situated within Greene County, of which the Appellant at the time of sale in September, 1978, was owner of an undivided one-eighth (1/8) as a tenant in common with her former husband Albert Kasuba.
The subject property was deeded in 1958 to "Albert Kasuba and Doris W. Kasuba," as tenants by the entireties, residing at "414 Lexington Avenue, McKeesport, *425 Pennsylvania." The recorded transfer was registered on the deed sheets of the Greene County Tax Assessment Office as a conveyance to "Albert Kasuba, et ux. (Doris W.), 414 Lexington Avenue, McKeesport, Pa." In 1968, Albert and Doris Kasuba moved from the Lexington Avenue residence to another property at 462 30th Street, McKeesport. After living two months at that Allegheny County location, Albert Kasuba left his wife Doris Kasuba to reside in Rices Landing, Greene County. To the time of hearing before the common pleas court, Doris Kasuba continued to reside in McKeesport at the 30th Street address, receiving mail addressed to her there or to her at the old Lexington Avenue address. Albert and Doris Kasuba were divorced June 22, 1978.
Until 1969, the Greene County Tax Assessment Office sent tax notice mailings regarding the subject property to the address of "Albert Kasuba, et ux., 414 Lexington Avenue, McKeesport, Pa." In 1970 or 1971, however, the address in the assessment office was changed presumably at Albert Kasuba's request to "Albert Kasuba, et ux., Box 74, Rices Landing, Pa. 15357." Thereafter, tax notices were sent to the Rices Landing address, where at no time did Doris Kasuba reside. Doris Kasuba herself never notified the tax assessment office of a change of address or of the divorce in 1978.
Claims for delinquent taxes were filed by the Greene County Tax Claim Bureau (Bureau) against the subject properties in 1976 and 1977. In both years the certified mail notices were mailed to: "Albert Kasuba, et ux., Box 74, Rices Landing, Pennsylvania 15357." Above this address, which appeared through the cellophane window on the envelope, was written "Mr. and Mrs. Albert Kasuba." In both years, the delivered claim notices were signed for by Albert Kasuba.
*426 The taxes on the properties remained unpaid and, in 1978, the Bureau gave notice of tax sale of the properties pursuant to the notice provisions of Section 602 of the Real Estate Tax Sale Law (Act), Act of July 7, 1947, P.L. 1368, as amended, 72 P.S. § 5860. 602.[1] The published notice listed the owner and identified the property as "Albert Kasuba, et ux., Claim Nos. . . ., Parcel No. . . ." The certified mail notice was addressed to "Mr. or Mrs. Albert Kasuba, Box 74, Rices Landing, Pennsylvania 15357," and the property was posted in the name of "Albert Kasuba, et ux." or "Mr. or Mrs. Albert Kasuba." Doris Kasuba's only actual notice prior to the sale was received the day of the sale from her daughter, who had seen a posted notice on the property the evening before. *427 Claiming she was not given sufficient notice, Appellant Doris Kasuba filed exceptions and objections to the delinquent tax sale.
Appellant basically argues to us that the tax sale is invalid, on the ground that it violated the notice provisions of the Act requiring that mail notice be sent to each owner of property to be sold at tax sale. The Appellant contends that the Bureau should have mailed a separate notice to her at her current address, her last known address or to the address of her former husband. Appellant also appears to argue that one notice sent to her former husband's address would only have been a sufficient notice to each owner had it been addressed to "Albert and Doris Kasuba," rather than "Albert Kasuba et ux." or "Mr. or Mrs. Albert Kasuba."
This case represents yet another variation in the difficult line of cases interpreting the meaning in the language of Section 602 of the Act which states, "In addition to such publications, similar notice of the sale shall also be given by the Bureau, . . . to each owner as defined by this act and by posting on the property." (Emphasis added.) Fortunately, our Supreme Court has now ruled as to the proper interpretation of that language as to cases arising after November 22, 1979. Teslovich v. Johnson, 486 Pa. 622, 406 A.2d 1374 (1979). In Teslovich, the Court held that the language emphasized in the above excerpt from Section 602 requires "separate and individual notice to each named owner of property; regardless of whether that owner holds in common, in joint, or by the entireties." Id. at 628, 406 A.2d at 1378. However, the Court specifically directed that its decision was to have prospective effect only beginning thirty days after the decision was filed.
Thus, the instant case, because it began prior to November 22, 1979, is not controlled by Teslovich. In *428 such circumstances we are bound by the law as it existed pre-Teslovich. In Tax Claim Bureau v. Wheatcroft, 2 Pa. Commonwealth Ct. 408, 278 A.2d 172 (1971), this Court held: "Under the facts of this case a proper letter of notification addressed to both husband and wife, holding title as tenants by the entireties, satisfies legal requirements. Notice to husband and wife living together at one address conforms to both the spirit and the letter of the law." (Emphasis in original.) Id. at 413, 278 A.2d at 175. In Wheatcroft v. Schmid, 8 Pa. Commonwealth Ct. 1, 301 A.2d 377 (1973), this Court again held that a single notice addressed to a husband and wife who were owners as tenants by the entireties of land sold at tax sale and living together at the same address constituted compliance with Section 602 even though the wife alone signed all the receipts for such notices.
It will be noted immediately that there are substantial factual variations which make the decisions in both Wheatcroft cases inapplicable to the instant case. Here, the parties were not living together at the same address. The parties were not tenants by the entireties when the notices were sent although the timing was very close.[2] It is readily apparent to us that none of the surrounding circumstances in either Wheatcroft case is present here.
It has been said many times that
The strict provisions of the Real Estate Tax Sale Law are never meant to punish taxpayers who omitted through oversight or error (from which the best of us are never exempt) to pay their taxes. Tax acts were rather meant to protect the local government against wilful, persistent, long standing delinquents for whom we *429 hold no brief, and to whom the appellate court decisions have consistently given short shrift.
Ross Appeal, 366 Pa. 100, 107, 76 A.2d 749, 753 (1950). Obviously, the notice provisions of Section 602 are there to assure that no one is deprived of property without due process of law. Chester County Tax Claim Bureau Appeal, 208 Pa. Superior Ct. 384, 222 A.2d 602 (1966). While we do not disagree with the trial judge's observation that the Bureau is under no duty to determine that a tenancy by entirety has been dissolved by divorce, the fact remains that the Bureau is under a duty to give notice to each property owner of a pending sale. That was not done here. The fair implication from the record in the instant case is that Mr. Kasuba unilaterally requested the tax authorities to change the property owner's address when he and Appellant separated. The address to which the notices were sent is his address where he resided. It simply cannot have been the law prior to Teslovich that one partner to a marriage could effectively deprive another of property rights by acting for himself to the detriment of that other by changing an address for tax purposes. Whatever the Bureau may or may not have been required to do by way of inquiry in these particular circumstances, the law cannot permit a person to be deprived of his or her property without due and timely notice. That is precisely what happened here. To pursue the issue of who was at fault misses the mark. The real issue is whether there was due and timely notice to the Appellant. It is clear that there was not.
The trial court also makes note of the fact that Appellant had actual notice of the sale before it took place. As we read the record, the Appellant's testimony is to the effect that her daughter saw a sign on the premises to be sold the night before the sale. The next day she informed Appellant who immediately *430 went to the tax office only to learn that the property had been sold a few hours before. Where a property owner has had full and timely notice of all steps taken prior to the sale and could not have been said to have been misled to his detriment he cannot thereafter complain about omission of notice of sale. Everett, Inc. v. Ayres, 22 Pa. Commonwealth Ct. 422, 349 A.2d 514 (1975). Here the actual notice received by Appellant through her daughter was neither "full" nor "timely."
Moreover, the Bureau did not completely fulfill its statutory obligation to send notice to "each owner" by addressing its notice of tax sale to "Albert Kasuba, et ux." or "Mr. or Mrs. Albert Kasuba." It has been held by this Court that identification of a husband and wife, owning as tenants by the entireties, in a tax claim bureau's mail notice, advertised notice, and posted notice as "Henry Whitley, Jr., et ux." was not sufficient or proper notice to "each owner." Everett, Inc. v. Ayres, supra. In Wheatcroft v. Schmid, supra, however, the Court held that a single notice addressed to "John W. and Jean G. Schmid" was sufficient to satisfy the Act's notice requirements. Therefore, we hold that to have been in compliance with the Act's notice provisions, the Bureau's notices of tax claims and tax sale in this case should have contained the names of each tenant by the entireties  "Albert and Doris W. Kasuba."
Strict adherence to the Act's notice provisions is required by the Bureau in order to guarantee protection of the Appellant's due process rights. Tax Claim Bureau v. Wheatcroft, supra. In this case only notice fully identifying each tenant by the entireties would afford protection to Appellant's due process rights; for "[w]hen an individual's property rights are at stake, due process requires that he or she be identified with clarity and without disguise so that those *431 rights may be asserted and the owners may fully protect his or her interest in the property concerned." Everett, supra, at 426, 349 A.2d at 516.
We shall not respond to the Appellant's argument that the forms of notice in the case before us violate the Equal Rights Amendment to the Pennsylvania Constitution, Pa. Const. art. I, § 28, and the federal constitutional guarantees of equal protection, for this issue was not raised below by the Appellant. "Matters not raised in, or considered by, the court below cannot be invoked on appeal even though they involve constitutional questions." Altman v. Ryan, 435 Pa. 401, 407, 257 A.2d 583, 585 (1969).
For the above reasons, we reverse the order of the lower court and hold the tax sale to be invalid.

ORDER
AND NOW, this 11th day of August, 1980, the order of the Court of Common Pleas of Greene County, Civil Division, dated July 27, 1979, is hereby reversed.
NOTES
[1] Section 602 of the Real Estate Tax Sale Law, 72 P.S. § 5860. 602, provides in pertinent part:

Prior to any scheduled sale the bureau shall give notice thereof, once a week for three (3) consecutive weeks in two (2) newspapers of general circulation in the county, if so many are published therein, and once in the legal journal, if any, designated by the court for the publication of legal notices. Such notice shall set forth (a) the purposes of such sale, (b) the time of such sale, (c) the place of such sale, (d) the terms of the sale including the approximate upset price, (e) the descriptions of the properties to be sold as stated in the claims entered, each description commencing with
 Name of Owner
`. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .'
 description
. . . .
Such published notice shall be addressed to the `owners or properties described in this notice. . . .'
In addition to such publications, similar notice of the sale shall also be given by the bureau, at least ten (10) days before the date of the sale, by United States certified mail, personal addressee only, return receipt requested, postage prepaid, to each owner as defined by this act and by posting on the property.
[2] The notices were sent under date of June 30, 1978. The divorce decree was dated June 22, 1978.