**In Re: Upset Sale Tax Claim of Montgomery County**

*James W. Hennessey,* for Axelrod Construction Co.

*Jeffrey V. Matteo,* for James and Bonnie Monahan.

*Alfred O. Breinig, Jr.,* for C. Everett, Inc.

*Michael J. Sheridan,* for Tax Claim Bureau.

LOWE, *P.J.,* November 19, 1984—Previous to September of 1983 petitioner, Axelrod Construction Company (hereinafter referred to as Axelrod), owned 162 lots in the Borough of East Greenville, Montgomery County, Pa. Some time before May, 1983, Arthur Shapiro of Axelrod was contacted by Mrs. Rose Decio, Director of the Montgomery

County Tax Claim Bureau (hereinafter referred to as bureau), concerning taxes owed on Axelrod's properties and a scheduled upset sale regarding them. It is Mrs. Decio's policy to notify large corporations that have numerous properties scheduled for upset sale of the upcoming sale and the amount of taxes owed, the purpose of this notification being to provide the taxpayer with a final opportunity to avoid having to pay added advertising and legal expenses. This communication is purely a matter of courtesy and is not required by statute. When Mrs. Decio contacted Mr. Shapiro she advised him that Axelrod owed $5,059.35 in taxes. The bureau concedes that it advised petitioner and that this was the *aggregate* amount owed by petitioner on all properties of petitioner. This was the only oral communication between Axelrod and the bureau. A check issued by Marietta Corporation* payable to the Tax Claim Bureau in the amount of $5,059.35 was dated May 12, 1983 and delivered to the bureau. On May 26, 1983 the bureau issued 160 receipts for taxes paid on properties owned by Axelrod and these receipts were sent to Axelrod. No written agreement to stay the tax sale was executed. The package of receipts did not contain receipts for two of the 162 properties owned by Axelrod respectively located at:

(a) 606 Morris Road - Lot 269, Block 1C, Unit 45, Parcel no. 06-00-02796-00-6, Borough of East Greenville, Montgomery County, Pa. (hereinafter 606 Morris Road); and

(b) 527 Blaker Drive - Lot 102, Block 1B, Unit 104, Parcel no. 06-00-00268-00-5, Borough of East Greenville, Montgomery County, Pa. (hereinafter 527 Blaker Drive).

---

* Marietta Corporation and Axelrod Construction Company are owned and controlled by the same principals and engage in interrelated business activities.

Petitioner acknowledges having received these receipts and "flipping through" the bunch before putting them away.

On July 11, 1983 petitioner, by its agent J. Mariano, signed for certified mail containing notice of an upset sale of the two properties in question. Notice of the sale was published in the Montgomery Law Reporter, Pottstown Mercury, and Norristown Times Herald on either August 5 or 7, 1983. Additionally, on August 2, 1983 the properties were posted for sale by the sheriff. The taxes owed were approximately $27 for each parcel. On September 19, 1983 petitioner, by its agent Shapiro, received notice that the two properties in question had been sold at upset sale for failure to pay taxes. The Blaker Drive property was purchased by respondents James and Bonnie Monahan for $700 and the Morris Road property was purchased by respondent C. Everett, Inc. for approximately $281.

On November 1, 1983, petitioner filed a petition to set aside tax sale. After hearing oral argument on October 2, 1984, this court entered an order on October 9, 1984 dismissing the petition and denying petitioner's prayer for relief. Petitioner has appealed the October 9, 1984 order to the Commonwealth Court of Pennsylvania, and this opinion addresses the matters complained of on appeal.

Petitioner contends that the tax sale of Parcel nos. 06-00-02796-00-6 and 06-00-00268-00-5 should be set aside because the Montgomery County Tax Claim Bureau misled petitioner by telling it that if it paid a certain sum, to wit, $5,059.35, the upset sale of its properties would be stayed, and that, notwithstanding payment of the required sum, the sales of the two parcels were not stayed. Petitioner further contends that the actions of the Tax Claim Bureau

invalidated the upset sale pursuant to 72 P.S. §5860.607(d).

It has become firmly established that "the purpose of tax sales is not to strip the taxpayer of his property but to insure the collection of taxes." Albert v. Lehigh Coal and Navigation Company, 431 Pa. 600, 613, 246 A.2d 840, 846 (1968), quoting Hess v. Westerwick, 366 Pa. 90, 98, 76 A.2d 745, 748 (1950). Pennsylvania Courts have held that the Real Estate Tax Sale Law, Act of July 7, 1947, P.L. 1368, as amended, 72 P.S. §5860.101 et seq., is constitutional. First Pennsylvania Bank N.A. v. Lancaster County Tax Claim Bureau, 44 Pa. Commw. 301, 404 A.2d 709 (1979), appeal dismissed 498 Pa. 122 (1982), vacated and remanded, 103 S. Ct. 3528 (1983). In Pavlow v. Brown, 12 Pa. Commw. 303, 315 A.2d 375 (1974), the Commonwealth Court held that the dominant purpose of the Real Estate Tax Sale Law (hereinafter referred to as act) was "to provide speedier and more efficient procedures for enforcing tax liens and to improve the quality of titles obtained at a tax sale." Id. at 307. The notice provisions of the act are set out in section 602, requiring notice by publication, certified mail, and posting. 72 P.S. §5860.602(a), (e)(1), (e)(3). The notice provisions of section 602 were clearly intended to assure that no one is deprived of property without due process of law. In Re Tax Claim Bureau, 53 Pa. Commw. 423, 419 A.2d 206 (1980). Furthermore, due process requires that this notice provision be strictly adhered to. Area Homes, Inc. v. Harbucks, Inc., 75 Pa. Commw. 97, 461 A.2d 357 (1983).

Section 607(d) of the act provides that an upset sale may be questioned as to its regularity and legality. 72 P.S. §5860.607(d). In In Re Sale of Real Estate by Venango County Tax Claim Bureau for

1977 Delinquent Taxes-Sale of 1979, 68 Pa. Commw. 609, 449 A.2d 879 (1982), the Commonwealth Court found that under §607(d) "the only acceptable basis for setting aside a tax sale on exceptions is a finding by a court that the proceedings of the bureau involved in the sale were irregular or illegal." Id. at 612. The taxpayer in Venango County, supra, had received notice that the tax bureau intended to sell the taxpayer's real property for delinquent taxes owed. The taxpayer had previously owned other property which was also scheduled to be sold. Upon receiving notice of the scheduled sale, the taxpayer paid the amount owed on the property previously owned by him, and he received a receipt for that property. The tax bureau subsequently sent the taxpayer two more notices advising him that the property presently owned by him was scheduled to be sold. The court of common pleas found as fact that the taxpayer failed to read the receipts given him and that he did not read the subsequent notices until the Friday before the tax sale scheduled for the following Monday. By the time that the taxpayer attempted to tender payment, the property had already been sold. On appeal, the Commonwealth Court affirmed the common pleas court order dismissing the taxpayer's exceptions to the court's adjudication, finding that the bureau had fully complied with the provisions of the act, and that the bureau was not responsible for the taxpayer's mistaken belief that he had paid the outstanding taxes on his property.

The situation in Venango County, supra, is analogus to that in the instant case in that in both situations the taxpayers acted under mistaken beliefs that they had paid the delinquent taxes, and ignored subsequent notices of a scheduled tax sale sent by the tax bureau. Admittedly, appellant in this

case was misled by the tax bureau. However, any misconception of appellant should have been corrected by the subsequent notice of the tax sale. Appellant does not contend that the statutorily required notice was in any way defective. The holding in Venango County, supra, establishes that a tax sale will be set aside only when "the proceedings of the bureau involved in the sale were irregular or illegal." Id. at 881. The telephone call from Mrs. Decio to Shapiro was not part of the statutory procedure required before a tax sale. The call was merely a courtesy which the bureau extends to large corporations. It is this court's view that the holding in Venango County, supra, refers to an irregularity or illegality in the statutorily mandated proceedings, and not to an informal telephone call made prior to the sending of the requisite notice. Inasmuch as the statutorily mandated notice was free of any irregularity or illegality, the tax sale should stand. There is no absence of due process.

Petitioner avers that the telephone conversation between Shapiro and the tax bureau and the subsequent payment by petitioner constituted an agreement between petitioner and the tax bureau, pursuant to 72 P.S. §5860.603, to stay the tax sale of all 162 lots in return for payment of the stated sum of $5,059.35, and that, in selling two of the 162 properties, the bureau breached the agreement. While petitioner is correct in his assertion that §603 permits such agreements, this section expressly provides that such agreements are to be in writing. 72 P.S. §5860.603. In Re By-Pass, Inc., 66 Pa. Commw. 588, 445 A.2d 850 (1982). Petitioner has failed to produce any written agreement between petitioner and the bureau.

Finally, comment must be recorded on the equitable considerations involved. An action to set aside

a tax sale is equitable in nature. See In Re Tax Claim Bureau, German Township, Mt. Sterling, 54½ Acres Miscellaneous Buildings, 64 Pa. Commw. 374, 439 A.2d 1349 (1982). Moreover, petitioner's argument is equitable in nature in that it claims that it was misled by the bureau and that it reasonably relied upon the information conveyed to it by Mrs. Decio. Petitioner does not challenge the propriety of the notice of sale and acknowledges that its agent accepted the notice by certified mail. Moreover, petitioner's agent and bookkeeper, Shapiro, concedes that he never counted the receipts sent by the bureau after payment was made. Had Shapiro counted the receipts he clearly would have been on notice that petitioner was not being credited for payment on all 162 properties. Furthermore, the notice by certified mail, publication, and posting would ordinarily put a reasonable and prudent businessperson on notice that there was a problem with the company's tax bill. Thus, our decision turns on whether, after receiving the warnings and notices given, a reasonable businessperson would have continued to rely on the bureau's mistaken representations.

It is our view that petitioner's continued reliance on the bureau's misrepresentations, after receiving the receipts and the notice of sale, was not justified. Petitioner is essentially relying on the doctrine of equitable estoppel by misrepresentation. Novelty Knitting Mills, Inc. v. Siskind, 500 Pa. 432, 457 A.2d 502 (1983). Under the doctrine of equitable estoppel, a party is bound by his representations if they are justifiably relied upon by another party. Northcraft v. Edward C. Michener Associates, Inc., 319 Pa. Super. 432 466, A.2d 620 (1983). The doctrine is designed to protect reasonable expectations and to insure fair dealing. Straup v. Times Herald,

283 Pa. Super. 58, 423 A.2d 713 (1980). However, an essential element of equitable estoppel is the lack of knowledge and the means of knowledge of the truth as to the facts in question. Cheltenham National Bank v. Snelling, 230 Pa. Super. 498, 326 A.2d 557 (1974), cert. denied, 421 U.S. 965. The receipts given to petitioner clearly supplied it with the means of ascertaining whether payment in full had been made. When petitioner received notice of the scheduled sale, it closed its eyes to the truth that its tax bill had not been paid in full and that its properties would be sold to satisfy the bill. "Courts of equity will not relieve a party from the consequences of an error due to his own ignorance or carelessness when there were available means which would have enabled him to avoid the mistake if reasonable care had been exercised." First Federal Savings and Loan Association v. Swift, 457 Pa. 206, 213, 321 A.2d 895, 898 (1974), quoting Home Owners Loan Corp. v. Crouse, 151 Pa. Super. 259, 263, 30 A.2d 330, 332 (1943). Petitioner readily acknowledges that it purposely delays payment of taxes on all its properties. In this controversy, the equities preponderate in favor of the innocent purchasers at the tax sale.

In light of the foregoing, the determination of this court should not be disturbed on appeal.