**In re Sale of Real Property for DELINQUENT TAX BY ELK COUNTY TAX CLAIM BUREAU HELD ON SEPTEMBER 11, 2000—PARCEL known as western one-half of Lot 39, Village of Centreville, Fox Township, Assessment No. 03–20–104–4983, Control No. 02–02741.**

**Appeal of Cathy Ann Frederick, Richard L. Frederick, Jonathan J. McCandless and Irene McCandless.**

Commonwealth Court of Pennsylvania.

Argued Oct. 11, 2001.
Decided March 14, 2002.

---

**3.** Although *Usher* was determined prior to the Supreme Court's ruling in *Grieff, Usher* is still good law.

Gerard R. Sorg, Saint Marys, for appellants.

Thomas G. Wagner, Saint Marys, for appellee, Elk Cnty. Tax Claim Bureau.

Norbert J. Pontzer, Ridgway, for appellee, R. Harvey.

Before McGINLEY, Judge, SMITH–RIBNER, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge SMITH–RIBNER.

Cathy Ann Frederick and her husband Richard L. Frederick and Jonathan J. McCandless and his wife Irene McCandless (together, Appellants) appeal from the February 26, 2001 order of the Court of Common Pleas of the Fifty–Ninth Judicial District, Elk County Branch, that overruled their exceptions/objections to a tax

sale of property and confirmed absolutely the court's September 26, 2000 decree nisi. Appellants question whether the Elk County Tax Claim Bureau (Bureau) gave proper notices as required before a tax sale of real estate under provisions of the Real Estate Tax Sale Law (Tax Sale Law), Act of July 7, 1947, P.L. 1368, *as amended,* 72 P.S. §§ 5860.101—5860.803, in particular to each "owner" as that term is defined in Section 102, 72 P.S. § 5860.102. Further, they question whether the trial court abused its discretion or erred by declaring in open court that the case was a "notice" case under the Tax Sale Law but then reversing itself in its opinion and order by declaring that the person whose name last appears as an owner of record on any deed is not entitled to notice because the deed has no significance; that the person in open, peaceable and notorious possession is not entitled to "certified mail" notice because the property was posted; and that persons other than those falling under the definition of owner in the Tax Sale Law are the true record owners.

I

At issue is a parcel of land known as the western half of Lot 39 in the Village of Centreville, Fox Township, Elk County. The trial court found that by deed dated April 22, 1907, in Elk County Deed Book 65, page 318, George Heigel purchased both the western and eastern halves of Lot 39. George Heigel died in 1931, and by deed dated September 21, 1951, and recorded in Elk County Deed Book 113, page 575, Minnie Heigel, George Heigel's wife, transferred the eastern half of Lot 39 to herself and her son Adrian Heigel. Minnie Heigel died in 1957. According to her last will and testament the eastern half of Lot 39 was devised to Adrian Heigel, and the remainder of the estate went to her other seven children. When Adrian Heigel died in 1976 he devised his estate,

including the eastern half of Lot 39, to his brother Tom Heigel, and when Tom Heigel died in 1987 the property was devised to his sisters Martha Dowie and Marie McMackin.

By deed dated February 2, 1989, recorded in Elk County Deed Book 261, page 513, Martha Dowie and Marie McMackin transferred the eastern half of Lot 39 to Cathy Ann Mosier, now Cathy Ann Frederick. By deed dated September 24, 1996, recorded in Elk County Deed Book 338, page 587, Cathy Ann Frederick transferred that property to Jonathan and Irene McCandless. On October 9, 1996 Cathy Ann Frederick and Richard L. Frederick recorded a quitclaim deed dated September 11, 1996, that quitclaimed all right, title and interest in all of Lot 39 to them from Michael Mosier, who was Cathy Ann Frederick's former husband. Cathy Ann Frederick admitted at the hearing in this matter that Mosier had no interest in the property that he could convey.

In February 1999 the Bureau received notices of delinquent taxes for the western half of Lot 39 for the 1998 tax year. According to assessment records the owner was "Heigel Minnie Estate Heirs c/o Martha Dowie." Stephanie A. Kilhoffer of the Bureau testified that she investigated the heirs of Minnie Heigel. She went first to the deed book, and there was no information there, so she then went to the estate book and found a listing of heirs on the first page. On March 12, 1999, a notice of return and claim was sent to Heigel Minnie Estate Heirs c/o Martha Dowie, at 149 Fairview Road, Kersey, PA, which was received by Martha Dowie on March 16, 1999. Petitioner's Ex. 2. Notice of sale was sent to Heigel Minnie Estate Heirs c/o Martha Dowie at the same address and was received on May 11, 2000. Petitioner's Ex. 3. Notices of sale were also sent to

the other heirs, at an address on Main Street in Kersey, but these notices were returned.[1] Notice of the tax sale was published in the Ridgway Record on July 24, 2000, and the property was posted on August 24, 2000. A second notice was sent to each of the heirs by first class mail, and again all were returned except that for Martha Dowie.

On September 11, 2000, the property was sold at tax sale to Robert Harvey for the upset bid of $417.40, and the sale was confirmed by order of court of September 28. Appellants filed their objections or exceptions to the tax sale on October 24, 2000, and Harvey filed a petition to intervene, which was granted. A hearing was held on February 2, 2001. By opinion and order of February 26, 2001 the trial court first rejected Appellants' contention that the property was not properly posted as required by Section 602(e) of the Tax Sale Law, 72 P.S. § 5860.602(e), based upon the credited testimony of Thomas Polaskie that he posted the sign on a tree in the middle of the lot facing the road and that there was no object closer upon which to post the notice.

As to Appellants' primary argument that the Bureau did not provide notice to an "owner" as that term is defined in the statute, the trial court quoted the relevant portion of the definition in Section 102 of the Tax Sale Law:

[T]he person in whose name the property is last registered, if registered according to law, or, if not registered according to law, the person whose name last appears as an owner of record on any deed or instrument of conveyance recorded in the county office designated for recording and in all other cases shall mean any person in open, peaceable and notorious

possession of the property, as apparent owners thereof, or the reputed owner or owners thereof, in the neighborhood of such property....

Elk County does not register deeds, *see Grace Building Co., Inc. v. Lanigan,* 15 Pa.Cmwlth. 643, 328 A.2d 919 (1974), so that portion of the definition did not apply.

Appellants contended that they were the last record owners by virtue of the 1996 quitclaim deed from Mosier to the Fredericks and that they were denied due process because they did not receive notice of the tax sale. The trial court quoted from *Farro v. Tax Claim Bureau of Monroe County,* 704 A.2d 1137 (Pa.Cmwlth.1997), where this Court stated that although due process requires taxing bureaus to ascertain the identity and whereabouts of the latest owners of record of property subject to sale for the purpose of providing notice, a bureau's duty to investigate is confined to determining the owners of record and then to using ordinary common sense business practices to ascertain proper addresses where notice may be given. Due process does not require the bureau to perform the equivalent of a title search or to make decisions to quiet title. *Id.*

■ The trial court stated that the legislature did not intend a result that is absurd, impossible of execution or unreasonable, citing Section 1922(1) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1922(1), and it concluded that because Mosier had no interest in the property to convey to the Fredericks, they obtained no ownership interest in the western half of Lot 39 by virtue of the quitclaim deed. Further, because the assessment office had no notice of that deed, the Bureau would have had to engage in the equivalent

1. At the hearing on February 2, 2001, Martha Dowie testified that she is the last surviving heir of Minnie Heigel.

of a title search, and even a title examination would not have revealed the Fredericks' claimed interest because Mosier would not have appeared in the chain of title in the grantor's index. Finally, the court rejected the contention that the McCandlesses were entitled to notice as apparent owners, finding it inconsistent that on one hand they claimed notorious possession yet on the other they denied seeing the posted notice.[2]

## II

■ Appellants first renew their contention that the Bureau failed to give notice to the "owner" as defined in the Tax Sale Law. They refer to general principles stated in *Tracy v. County of Chester, Tax Claim Bureau*, 507 Pa. 288, 489 A.2d 1334 (1985), that the purpose of tax sales is not to strip the taxpayer of his or her property but to insure the collection of taxes, which may not be implemented without due process. Appellants note that in tax sale cases the tax claim bureau has the burden of proving compliance with the notice provisions of the Tax Sale Law. *Hunter v. Washington County Tax Bureau*, 729 A.2d 142 (Pa.Cmwlth.1999).[3]

Appellants quote the statutory definition of owner noted above, and they contend that in this case the Bureau was required to give notice to the Fredericks as "the person whose name last appears as an owner of record on any deed or instrument of conveyance recorded in the county office designated for recording...." Section 102 of the Tax Sale Law. Appellants assert that even if the Minnie Heigel Estate heirs have legal title to the property, the Tax Sale Law required notice to the Fredericks. Part of the Appellants' second stated question and argument is in essence an extension of this point. Appellants contend that the trial court erroneously declared that the person whose name appeared on the last recorded deed was not entitled to notice because the deed was legally insufficient. They note that at the hearing the trial court stated that the purpose of the proceeding was to determine compliance with the notice provisions of the Tax Sale Law, not to determine title to the property. Appellants maintain that the trial court in its opinion incorrectly reversed this position, thereby depriving them of a property right without benefit of proper notice and hearing.

The Bureau and Harvey (together, Appellees) assert that the trial court's determination that notice to the Fredericks was not required under the definition of owner in Section 102 of the Tax Sale Law was not based upon the invalidity of the deed per se but on the fact that the deed could not

2. This Court's review in tax sale cases is limited to determining whether the trial court abused its discretion, rendered a decision with a lack of supporting evidence or clearly erred as a matter of law. *Halpern v. Monroe County Tax Claim Bureau*, 126 Pa.Cmwlth. 35, 558 A.2d 197 (1989).

3. Section 602(a), 72 P.S. § 5860.602(a), requires publication of notice of a sale in newspapers of general circulation at least thirty days before the event. Section 602(e)(1), 72 P.S. § 5860.602(e)(1), requires notice of the sale by certified mail, return receipt requested, and if the return receipt is not received from each owner, then at least ten days before the sale there must be notice by first class mail to those who did not acknowledge the first notice under Section 602(e)(2), 72 P.S. § 5860.602(e)(2). If any mailed notices are unclaimed, the tax claim bureau must make additional reasonable efforts to discover the whereabouts of each owner and to notify him or her under Section 607.1, added by Section 30 of the Act of July 3, 1986, P.L. 351, 72 P.S. § 5860.607a. Finally, each property to be sold must be posted at least ten days before the sale under Section 602(e)(3), 72 P.S. § 5860.602(e)(3). If any of the prescribed methods of notice is defective, the sale is void. *Hunter*.

be found under the title indexing system used in Elk County. No conveyance out of the Minnie Heigel heirs could be found by searching the grantor index. Because Mosier's name was unknown to the Bureau, the grantee index was useless to the Bureau also. They note that there is no evidence that the invalid deed ever reached the Assessment Office, and they argue that the legislature could not have intended that an invalid and unidentifiable deed would cause notice to be sent to the holder of that deed.

This Court agrees with the trial court that the quitclaim deed from Mosier to the Fredericks did not establish the Fredericks as "owners" within the meaning of the Tax Sale Law so as to require notice to them. Although the trial court correctly stated that the purpose of the hearing was to determine compliance with the Tax Sale Law rather than to determine title, the Section 102 definition of owner refers to the "the person whose name last appears as an *owner* of record on any deed or instrument of conveyance recorded in the county office designated for recording. . . . ." (Emphasis added.) The fatal fallacy in Appellants' argument is their assumption that the quitclaim deed from Mosier conveyed an interest in land. As a matter of law it did not.

▪ The law in this Commonwealth has long been as stated by the Supreme Court in *Greek Catholic Congregation of Borough of Olyphant v. Plummer*, 338 Pa. 373, 377, 12 A.2d 435, 437 (1940):

> Quit-claim deeds, long known to the law, are used when a party wishes to sell or otherwise convey an interest he may think he has in land but does not wish to warrant his title. It does not purport to convey anything more than the interest of the grantor at the time of its execution. 16 Am.Jur. p. 560, sec. 219: *'The distinguishing characteristic of a quit-*

*claim deed is that it is a conveyance of the interest or title of the grantor in and to the property described, rather than of the property itself.'* (Emphasis added.)

The Supreme Court stated further in the related case of *Greek Catholic Congregation of Borough of Olyphant v. Plummer*, 347 Pa. 351, 353, 32 A.2d 299, 300 (1943): "One who receives a quit-claim deed to a property must proceed with caution if he seeks to possess himself of that property. By securing a quit-claim deed he has eliminated only one person who might bar his ingress to that property. A quit-claim deed contains no covenant of peaceful possession."

Cathy Ann Frederick testified on cross-examination that Mosier never had a record title for Lot 39, and he had nothing out of the Heigels to back up the quitclaim deed to the entire lot that he gave. N.T. at p. 82. By virtue of the quitclaim deed the Fredericks became "owners" only of whatever interest Mosier had to convey. In this highly unusual and questionable situation, where the Fredericks knew at the time of recording that the purported grantor had no interest in the property, they became holders of a worthless quitclaim deed, but they never became owners of record *of the property*, even though the quitclaim deed was recorded. The trial court therefore correctly held that they were not owners for purposes of the Tax Sale Law.

## III

▪ Appellants challenge other aspects of the notice as well. They assert that even assuming that the heirs of Minnie Heigel were the owners entitled to notice, the mailings to them were insufficient under cases that require individual notice to each named owner under Section 602(e) of the Tax Sale Law. *Teslovich v. Johnson*, 486 Pa. 622, 406 A.2d 1374 (1979) (prospec-

tively requiring separate notice to each of tenants by the entireties); *LaBracio v. Northumberland County,* 78 Pa.Cmwlth. 533, 467 A.2d 1221 (1983) (requiring separate notice to each of tenants in common). They also contend that when notices were returned unclaimed, then Section 607.1 of the Tax Sale Law, Section 30 of the Act of July 3, 1986, P.L. 351, 72 P.S. § 5860.607a, required additional efforts to discover the whereabouts of such owners and to notify them. In addition, Appellants assert that the posting was not conspicuous and placed for all to see, citing *Ban v. Tax Claim Bureau of Washington County,* 698 A.2d 1386 (Pa.Cmwlth.1997). They assert briefly that the McCandlesses were entitled to notice as apparent occupiers.

Appellees rely upon *Kleinberger v. Tax Claim Bureau of Lehigh County,* 64 Pa. Cmwlth. 30, 438 A.2d 1045 (1982), which stated that there must be strict compliance with the Tax Sale Law to guard against deprivation of property without due process, and in addition that a tax claim bureau must use ordinary common sense business practices in ascertaining the owners and the proper addresses to which required notices must be sent. They argue that common sense dictated that the heirs of Minnie Heigel were the proper parties to be notified, because there was no discoverable evidence of a conveyance out of her heirs for the western half of Lot 39. They note that separate notices were sent to each of the heirs, at the address available. Appellees point out that neither Dowie nor any other heir of Minnie Heigel has objected to the tax sale.

The Court agrees that the Bureau used common sense business practices in attempting to identify and notify the Minnie Heigel heirs. First, the efforts described by Kilhoffer show a good faith attempt to locate owners whose names were not already on file with the Bureau. Appellants assert that heirs other than Dowie were not notified, but the hearing established that Dowie was the sole surviving child of Minnie Heigel. Kilhoffer stated that the practice of the Bureau was to make telephone calls and to take similar steps if certified notices were returned unclaimed. In view of the evidence that the person entitled to notice received it, the Court declines to invalidate the tax sale at Appellants' behest in the name of deceased heirs. Regarding the posting, the Court notes that the trial court credited the testimony of Polaskie that he posted the notice on the tree closest to the road. Very different circumstances were involved in *Ban,* where a notice was posted on the side of a house that could not be seen from the road. Also, the trial court plainly credited Polaskie's testimony that although someone occupied the eastern half of the property, the western half was vacant. In sum, the Court concludes that the trial court did not err, and its order is affirmed.

### ORDER

AND NOW, this 14th day of March, 2002, the order of the Court of Common Pleas for the Fifty Ninth Judicial District, Elk County Branch, is affirmed.