No. 46,533

E. ARTHUR TINGLE, *Appellant*, v. THE CITY OF WICHITA, KANSAS, a Municipal Corporation, and JOSEPH A. REDMOND, JR., also known as BUD REDMOND, *Appellee.*

(505 P. 2d 717)

Opinion filed January 20, 1973.

*Dennis E. Shay*, of Smith, Shay, Farmer and Wetta, of Wichita, argued the cause, and *Paul V. Smith*, of the same firm, was with him on the brief for appellant.

*H. E. Jones*, of Hershberger, Patterson, Jones and Thompson, of Wichita, argued the cause, and *John Dekker*, of Wichita, was with him on the brief for appellee.

The opinion of the court was delivered by

FATZER, C. J.: This is a civil action for damages instituted by the appellant, E. Arthur Tingle, against the city of Wichita, appellee, for causing a structure to be razed and removed from property belonging to Tingle. The facts are not materially in dispute and those necessary for a disposition of the case on appeal may be summarized as follows:

On October 3, 1967, the governing body of the city of Wichita, pursuant to the provisions of K. S. A. 12-1750 *et seq.*, (as amended) and after notice and hearing with respect to the property in question, adopted a resolution condemning the structure at 512-514 West Third Street in Wichita, as being unsafe and dangerous. The resolution provided the owner had ten days from the date of its publication in which to commence repair or removal of the structure found to be unsafe and dangerous, and more particularly provided:

". . . *[I]f such owner fails to commence* the repair or removal of such structure within the time stated *or fails to diligently prosecute the same* until the work is completed, *said governing body will cause the structure to be razed and removed* and the costs of such razing and removing, less salvage if any, to be assessed as a special assessment against the lot or parcel of land upon which the structure is located as provided by law." (Emphasis supplied.)

The resolution was published in the official city newspaper, the Wichita Beacon, on November 8, 1967. It is noted the appellant stipulated the city of Wichita legally and properly condemned the structure in question and stipulated in the pretrial order the structure was properly found to be unsafe and dangerous and a fit subject for condemnation upon the adjudication by the governing body of Wichita to that effect.

Subsequently, Tingle purchased the premises on November 3, 1967, after the public hearing by the governing body to condemn the structure, but prior to publication of the resolution of condemnation. Tingle candidly concedes he knew the structure had been condemned when he purchased the property.

On November 18, 1967, the time fixed by the resolution to commence repair or removal of the structure had expired and the appellant had made no effort to repair or remove the structure.

Thereafter, and on December 12, 1967, Tingle sought and received a building permit from the city of Wichita. As a condition to the permit, the inspection department required him to pay the

costs of the condemnation proceedings. After the issuance of the permit, Tingle proceeded to clean up the debris in the dilapidated structure and around the grounds, and some work was done on partitions inside the building. In addition, one William Wilson, a licensed contractor, was engaged to do specified phases of the renovation, and eighteen new window frames were installed. Some partition work was done and the foundation of the structure was repaired. A sidewalk portion was laid and a new metal stairway was installed in the rear of the building.

In any event, as of July 11, 1968, the appellant had a problem of financing, and the repairs and improvements outlined in the first building permit had not been completed. The renovation was unfinished, and Tingle was informed he would have to secure a second permit. At that time he was advised the city intended to have the structure razed and removed if he did not diligently pursue and complete the renovation. The city, as a condition to the issuance of the second permit, required some assurance from Tingle that the structure would be repaired. Pursuant to that directive, Tingle submitted a letter to the Central Inspection Division, dated July 11, 1968, concerning the project. The substance of the letter was that work would commence on the project by July 23, 1968, and would be completed "to the satisfaction of Central Inspection by 9/30/8." The letter was signed by Tingle.

A second permit was issued on July 22, 1968, and some work on the renovation had been done; however, as of August 27, 1968, the appellant was advised again that if continued progress was not made on the structure, it would be wrecked.

On September 2, 1968, J. Hugh Brown installed some new plumbing in the structure. He worked through September 12, 1968, and at that point the basic plumbing in the floors of the proposed bathrooms had been installed; however, there were no fixtures, or running water in the building. Nothing was done to the property subsequent to Brown's work insofar as construction was concerned.

On September 30, 1968, the second permit expired, and the Building Inspector had not changed his opinion concerning the habitability of the structure. As of that date there was no electricity, no water, and no gas.

The city, being of the opinion the appellant had abandoned the project on November 8, 1968, canceled the second building permit. The file concerning the building permits was closed, and the appellant was advised to obtain a new permit before any further

work could be completed. As of that date, the only work done on the structure was some cleanup and the installation of plastic plumbing drains.

In December, 1968, the city was still of the opinion the property was not habitable and sought to have the structure razed and removed. On December 4, 1968, the city engaged Joseph A. Redmond, Jr., to demolish and remove the dilapidated house. Demolition commenced and was completed on December 10, 1968, and the razed structure was removed and the property cleaned up by January of 1969.

The city gave no additional notice to the appellant that it had contracted to have the structure razed and removed. The appellant first discovered the premises were being razed when he made a routine check of the site. It was stipulated that as of the date the razing commenced, the structure was dilapidated and was not habitable. There was no water, no electricity, and no gas hooked up. The plumbing was not completed and the wiring had not been commenced. There was no furnace in the house and it could not have been heated.

The appellant filed claim against the city on February 19, 1969, pursuant to K. S. A. 12-105 (since amended) and the same was denied. Thereafter, on October 8, 1969, the appellant commenced this action to recover the damages allegedly sustained by the unlawful razing of the structure.

On June 8, 1970, the cause came on for jury trial, and on June 11, 1970, the jury returned its general verdict in favor of the city of Wichita. The appellant filed a motion for new trial, and it was overruled on September 21, 1970. From that judgment of the district court, Tingle has perfected this appeal, citing numerous specifications of error.

The appellant first contends the district court erred in holding the city had no duty to give notice and provide a hearing to him prior to entering upon the property in question and causing the dilapidated structure to be removed. He argues the failure to give notice and an opportunity to be heard is a taking of his property without due process of law.

In support of his position, the appellant has called to our attention two cases—*Aronoff v. City of St. Louis*, 327 S. W. 2d 171 (Mo.), and *Jarvis v. Mayor & City Council of Baltimore*, 248 Md. 528, 237 A. 2d 446. While factually similar to the case at bar,

close scrutiny of the procedural repairments of the unsafe and dangerous structures provisions in *Aronoff* indicates a far different duty was placed upon the municipality as to its statutory authority to raze and remove the structures than that assigned to the appellee in the case at bar. The statutory authorization in *Aronoff* established mutually exclusive possibilities—either the structure could be repaired or it could not. Only in the latter instance, where the municipality determined that the structure could not be repaired, did the governing body have the power to raze the building and have it removed.

In *Jarvis* the facts clearly disclose the municipality gave no notice and provided no opportunity whatsoever to the property owner prior to razing and removing the structure. That is not the case here, as the appellant has frankly conceded the city legally condemned the structure in question.

*Aronoff* and *Jarvis* both support the proposition that notice and hearing are a condition precedent to condemnation of a structure; however, neither is authority for the additional notice and hearing requirements the appellant contends are constitutionally demanded in this case. In light of the concession made by the appellant that the city of Wichita properly condemned the structure, we conclude the city complied with the due process requirements enumerated by *Aronoff* and *Jarvis*.

Fundamentally, Tingle argues estoppel even though his contention is framed in a due process claim. In short, he contends the conduct of Wichita in requiring him to pay the costs of condemnation, in issuing building permits, and permitting him to commence repair of the structure, placed him in a position of reliance upon that conduct as effectually waiving the prior notice and adjudication of condemnation so as to require additional notice and opportunity to be heard prior to demolishing the structure. The point is not well taken.

K. S. A. 12-1753 provides statutory authority for cities to find by resolution that, after prior notice and hearing, a particular structure is unsafe and dangerous. The statute requires the city to order the structure to be repaired or removed, and provides that the resolution shall fix a reasonable time in which the property owner may commence repair or removal on his own. More important, however, the statute further requires the city to put the owner on notice that if he fails to commence repair or removal

within the specified time, *or fails to diligently prosecute the same until the work is completed, the governing body may cause the structure to be razed and removed.* Once the owner has been put on notice, his failure to diligently carry out repair on the property, authorizes the city to proceed to have the structure razed.

This court is of the opinion that once a structure has been legally condemned, the propriety of its razing and removal by the city for failure to commence repair or removal, or failure to diligently prosecute the same on the part of the owner, is a question of fact to be determined by the finder of fact. If in the opinion of the jury, the owner had diligently prosecuted repair or removal, the city would lack authority to raze the structure, and an action would lie for demolition of the building. However, upon review of the record, we are compelled to conclude the jury had ample evidence to find the appellant had abandoned repair so as to authorize the city to raze the structure by reason of the owner's failure to diligently prosecute and complete the repair.

That being the case, no additional notice or hearing was required. Once placed on notice by the resolution, the owner has the burden of affirmatively repairing or removing the structure. Nonfeasance with respect to that duty authorizes the municipality to assume the responsibility and raze the structure in the interest of public health and safety.

As indicated, the evidence clearly shows Tingle failed to diligently prosecute repair. Approximately one year passed from the passage of the resolution condemning the structure. Two building permits were issued and expired. The appellant breached the representation in his letter of intent that he would complete repair to the satisfaction of the Building Inspector on or before September 30, 1968. Even after being notified the second permit had expired and that the city had concluded the repair of the structure abandoned, he took no affirmative steps to secure a new permit or explain his dilatory conduct to the Building Inspector. It was only after some thirty days notice to Tingle that the city had determined repair to have been abandoned, that the contract was executed with Redmond to raze and remove the structure. The appellant may not be heard to argue that such conduct could be equated with diligent prosecution of repair on his part.

Other specifications of error concern jury instructions requested

by the appellant but refused by the district court, and his objections to instructions given to the jury. The substance of the requested instructions and Tingle's objections to those given by the district court, is that he argues the burden was upon the city of Wichita to show he failed to diligently prosecute repair. The scope of the instructions given was that Tingle had the burden of proof and had to establish by a preponderance of the evidence that the city of Wichita was without the authority to cause the structure to be razed, under the facts and circumstances of the case.

Taking the instructions as a whole, this court is of the opinion they properly stated and explained the law of the case. The action sounded in tort to recover damages and the burden of proof was upon the appellant. As the plaintiff, he had the burden to establish that the city of Wichita, as defendant, unlawfully razed the building. The jury, having heard the evidence and under proper instructions of the court, concluded the city had acted lawfully and reasonably, and that the appellant had failed to diligently prosecute the work required by the city to make the structure safe and habitable.

The judgment is affirmed.