## CIRCUIT COURT OF THE CITY OF WINCHESTER

Doris J. Combs

    v.

City of Winchester and
Frances M. McIntosh

Case No. (Law) 90-L-286

By JUDGE JOHN E. WETSEL, JR.

October 2, 1991

    This case came before the Court on October 2, 1991, for ruling upon the following pleadings:

    1. Demurrer filed by defendant City against the Motion for Judgment of Combs;

    2. Plaintiff Combs's motion for default judgment against defendant McIntosh;

    3. Defendant McIntosh's Motion for Disqualification of plaintiff's counsel; and

    4. Plea of the statute of limitations filed by plaintiff Combs to the counterclaim of McIntosh.

    Upon consideration of the argument of counsel and memoranda filed by the parties, the Court made the following rulings.

### Demurrer of the City

The demurrer of the City is sustained on all grounds except that of the claim that the City's action and the statute under which it was taken violated the due process requirements of the state and federal constitution. Leave is granted to the plaintiff to file an amended motion for judgment by October 24, 1991, and plaintiff shall file with that amended motion for judgment a memorandum of authorities in support of the claim that the action and statute are unconstitutional. The City shall have twenty-one days from its receipt of the plaintiff's pleadings to file such responses thereto as it deems advisable.

### I. *Findings of Fact*

For the purpose of the demurrer, the following facts were admitted in the Motion for Judgment of the plaintiffs.

The record title to 116 East Pall Mall Street, Winchester, Virginia (hereinafter the "Property") at all times relevant to this case was in the name of Frances M. McIntosh as life tenant and Doris J. Combs as the remainderman.

In 1989 the Property was improved by a dwelling which had not been occupied for over ten years and had fallen into an advanced state of disrepair.

On August 17, 1989, Michael A. Webber, City Engineer for the City of Winchester, Virginia, sent McIntosh a letter by certified mail, which she received, advising McIntosh that the property had been inspected and found to be unsafe and in violation of the Virginia Uniform Statewide Building Code and was to be demolished.

The City received no response to the August 17, 1989, letter to McIntosh, and on January 8 and 9, 1990, the City demolished the dwelling and graded the property.

Remainderman Combs has sued the City and Webber in this action for damages for the demolition of the dwelling claiming that the notice which the City gave McIntosh was legally inadequate as no notice as given to her of the proposed demolition pursuant to provisions of the building code.

## II. *Conclusions of Law*

The Court considered the plaintiff's allegations according to "the settled rule that a demurrer admits the truth of all well-pleaded material facts. All reasonable inferences fairly and justly drawn from the facts alleged must be considered in aid of the pleading." *Russo v. White*, 241 Va. 23, 24, 400 S.E.2d 160 (1991), quoting *Fox v. Custis*, 236 Va. 69, 71, 372 S.E.2d 373 (1988).

Governmental demolition of an unsafe structure is regulated by the Virginia Statewide Building Code which provides in volume 2, § 107.3, that the following notice shall be provided when a building is determined to be unsafe by the governmental unit:

> If a building is found to be unsafe, the code official shall serve a notice to the owner, the owner's agent or person in control of the unsafe building. The notice shall specify the required repairs or improvements to be made to the building or require the unsafe building, or portion of the building, to be taken down and removed within a stipulated time. Such notice shall require the person notified to declare to the designated official without delay the acceptance or rejection of the terms of the notice.

The letter of August 17, 1989, from Webber to McIntosh met the procedural requirements of this section.

The Statewide Building Code has been adopted by the City pursuant to Va. Code Ann. § 36-97 et seq.

For purposes of the Uniform Statewide Building Code, Section 36-97(15) defines owner as follows:

> "Owner" means the owner or owners of the freehold of the premises *or lesser estate therein*, lessee or other person, firm or corporation in control of a building. (Emphasis added.)

Notice to the owner is met by providing notice to the life tenant because the life tenant owns one of the principal lesser estates in property and is entitled to the

exclusive current possessory interest in the property. *See* 7A M.J., *Estates*, § 22 (1989).

The actions of the City through its employee Webber, the City Engineer, are actions to which both defendants Webber and the City of Winchester are entitled to the protection of sovereign immunity. A governmental function is one that advances, protects or preserves the "general public health and safety." *Fenon v. City of Norfolk*, 203 Va. 551, 125 S.E.2d 808 (1962). The general public health and safety specifically includes the "demolition of structures which endanger or imperil the public health." *Ashbury v. City of Norfolk*, 152 Va. 278, 286, 147 S.E.2d 223 (1929).

Sovereign immunity applies to the City Engineer as well as the City. The position of City Engineer Webber is analogous to the College Superintendent of Buildings in *Messina v. Burden*, 228 Va. 301, 321 S.E.2d 657 (1984). Webber's activities clearly involved the exercise of judgment and discretion, and he was acting within the course and scope of his employment at all times alleged in the motion for judgment. The facts of this case would not legally support a charge of either gross negligence or intentional misconduct. *See, Lentz v. Morris*, 236 Va. 78, 82, 372 S.E.2d (1988). The enforcement of the building code by the City is a governmental function clothing the city and its building officials with sovereign immunity. *Boyd v. Brown*, 12 Va. Cir. 54 (Newport News 1986).

"Under Virginia law, where, as here, a defendant's actions are clothed with sovereign immunity, a plaintiff must establish gross negligence in order to prevail." *Colby v. Boyden*, 241 Va. 125, 130, 400 S.E.2d 184 (1991). "[G]ross negligence is the 'absence of slight diligence, or the want of even scant care'." *Id.* at 133, quoting *Frazier v. City of Norfolk*, 234 Va. 388, 393, 362 S.E.2d 688 (1987). The facts of this case as pleaded in the motion for judgment would not appear to be typical of those commonly associated with gross negligence claims.

For the foregoing reasons, the demurrer of the City of Winchester and Engineer Webber is sustained.

### Combs's Motion for Default Judgment

Plaintiff Combs's motion for judgment was served on defendant McIntosh, who resides in New York, through

the Secretary of the Commonwealth on December 26, 1990, and her responsive pleadings were filed on January 24, 1991 -- seven days late. The delay in filing was very slight, and no prejudice resulted to the plaintiff; therefore, the motion for default judgment is denied.

### Combs's Plea of the Statute of Limitations to McIntosh's Counterclaim

In her counterclaim, McIntosh claims that the December 16, 1982, deed creating her life estate and granting to Combs the remainderman's interest in the property was procured by fraud. Actions for fraud accrue when the fraud is discovered, "or by the exercise of due diligence reasonably should have been discovered." Va. Code Ann. § 8.01-249. To avoid the effect of the statute of limitations, McIntosh will have to show that her cause action accrued within two years of the filing of the motion for judgment. Section 8.01-243(B) applies to fraud actions which accrued after October 1, 1987.

Defendant McIntosh shall file a bill of particulars setting forth when she discovered the alleged fraud and a memorandum of authorities in support of her position that the statute of limitations has not run on her fraud claim by October 24, 1991, and plaintiff Combs shall have twenty-one days from her receipt of that memorandum to file such responses thereto as deemed advisable.

### McIntosh's Motion to Disqualify Combs's Counsel

David McClure was an associate of plaintiff's counsel in 1982, and McClure prepared the deed which the defendant McIntosh now claims was procured by fraud. On December 20, 1982, McClure wrote McIntosh indicating that a dispute had arisen between Combs and McIntosh, and by that letter, McClure refunded to McIntosh $60.00 which she had apparently paid to McClure to prepare the very deed which is now challenged, so it would appear that McIntosh was a client of Massie's law firm at that time. Since the fraud action arose out of the transaction in which plaintiff's counsel's law firm was formerly involved, it would appear that Mr. Massie should withdraw as counsel for Combs unless the facts surrounding his firm's participation in the prepara-

tion and recording of the December 16, 1982, deed are agreed to by McIntosh. *See* Legal Ethics Opinions 441 and 672. Accordingly, the Court will defer ruling on the motion to disqualify pending further development of the facts.

### December 16, 1991

This case came before the Court on December 12, 1991, for ruling upon the Demurrer and Special Plea of the defendant City to the Amended Motion for Judgment on the claim that the demolition of a residence by the city and the statutes upon which that action was premised were unconstitutional and upon the Demurrer of the defendant Weber. Upon consideration of the argument of counsel and memoranda filed by the parties, the Court made the following rulings.

### I. *Findings of Fact*

For the purpose of the Demurrers and Special Plea, the following facts were admitted in the Amended Motion for Judgment of the plaintiff.

The record title to 116 East Pall Mall Street, Winchester, Virginia, (hereinafter the Property) at all times relevant to this case was in the name of Frances M. McIntosh and William F. McIntosh as life tenants and Doris J. Combs as the remainderman.

In 1989, the Property was improved by a dwelling which had not been occupied for over ten years and had fallen into an advanced state of disrepair.

On August 17, 1989, Michael A. Weber, City Engineer for the City of Winchester, Virginia, sent Mrs. Frances McIntosh a letter by certified mail, which she received, advising her that the property had been inspected and found to be unsafe and in violation of the Virginia Uniform Statewide Building Code and was to be demolished. No notice of the proposed demolition was sent to Combs or to William McIntosh.

The City received no response to the August 17, 1989, letter to Mrs. McIntosh, and on January 8 and 9, 1990, the City demolished the dwelling and graded the property.

Remainderman Combs has sued the City and Weber in this action for damages for the demolition of the dwelling claiming that the notice which the City gave was legally

inadequate as no notice was given to Combs of the proposed demolition pursuant to provisions of the building code.

On March 14, 1989, the City of Winchester validly adopted the Virginia Uniform Statewide Building Code and incorporated it into Chapter 5 of the Building Regulations of the Code of the City of Winchester.

The Virginia Uniform Statewide Building code adopted by the City includes Volume 2 of the Building Maintenance Code, which regulates the demolition of unsafe structures. The plaintiff is not challenging the validity of the adoption procedure of the Uniform Statewide Building Code by the City of Winchester.

The Building Code, Volume 2, § 107.3, provides that:

> If a building is found to be unsafe, the Code official shall serve a notice to the owners, the owner's agent, or person in control of the unsafe building. The notice shall specify the required repairs or improvements to be made to the building or require the unsafe building, or portion of the building, to be taken down and removed within a stipulated time. Such notice shall require the person notified to declare to the designated official without delay the acceptance or rejection of the terms of the notice.

On August 17, 1989, Michael Weber, City Engineer of the City of Winchester, sent Frances M. McIntosh, 17-27 West 125th Street, New York, New York 10027, a letter advising her that the property at 116 East Pall Mall Street was in violation of the building code (plaintiff's Exhibit 4 to the motion for judgment) and further advising her that:

> This Department's opinion is that it would not be economically feasible to repair this structure. In pursuance to Code § 107, this structure has been listed as an unsafe structure. As of August 17, 1989, I ordered the building posted against entry or occupancy except for purposes of inspection or demolition. I request that you secure a demolition permit and have

the structure taken down and removed by August 31, 1989. Copies of the above-mentioned Code are available for inspection at my office.

If you do not respond or comply by the above date, the City will initiate the demolition of the structure(s) as provided under § 120.6. The cost of such demolition will be billed to you. If you fail to reimburse the City for its cost, the cost will be added to your city real estate tax bill. If you should have any questions, feel free to contact me at 667-1815. I am most easily reached between 8:00 a.m. and 9:00 a.m., Monday through Friday.

This letter was sent by certified mail to Mrs. McIntosh and was received by Hazel Thomas, attorney in fact for Frances M. McIntosh.

For the purposes of the Uniform Statewide Building Code, Va. Code § 36-97(15) defines owner as follows:

"Owner" means the owner or owners of the freehold of the premises or lesser estate therein, lessee or other person, firm or corporation in control of a building.

Section 108.1 of Volume 2 of the Uniform Statewide Building code provides that:

The owner of a building or the owner's agent may appeal from the decision of the Code Official to the local Building Code Board of Appeals established under Volume 1 -- New Construction Code of the Uniform Statewide Building Code within twenty days after the day the notice was served when it is claimed that:

1. The Code Official has refused to grant a modification of the provisions of the Code;

2. The true intent of this Code has been incorrectly interpreted;

3. The provisions of this Code do not fully apply;

4. The use of a form of compliance that

is equal to or better than that specified in this Code has been denied.

No action was taken against the property within the time specified in this section for an appeal, and no appeal was filed by Mrs. McIntosh.

## II. *Conclusions of Law*

The court considered the plaintiff's allegations according to "the settled rule that a demurrer admits the truth of all well-pleaded material facts. All reasonable inferences fairly and justly drawn from the facts alleged must be considered in aid of the pleading." *Russo v. White*, 241 Va. 23, 24, 400 S.E.2d 160 (1991), quoting *Fox v. Custis*, 236 Va. 69, 71, 372 S.E.2d 373 (1988). *Accord Cox Cable Hampton Road, Inc. v. City of Norfolk*, 242 Va. 394, 410 S.E.2d 652 (1991). In considering the City's demurrer and special plea, it is proper for the court to take judicial notice of the provisions of the Code of Virginia, the Uniform Statewide Building Code, and the City's adoption thereof. *See* Va. Code §§ 8.01-385 and 8.01-386.

The plaintiff is not challenging the City's adoption of the Uniform Statewide Building Code. On March 14, 1989, the City validly adopted the Virginia Uniform Statewide Building Code and incorporated it into Chapter 5 of the building regulations of the City.

Beginning its analysis, the Court was mindful "of the presumption of validity that attaches to a statute, that requires this Court to resolve any reasonable doubt as to the statute's constitutionality in favor of its legality if possible." *Taylor v. Worrell Enterprises*, 242 Va. 219, 221, 409 S.E.2d 136 (1991). Petitioner's challenge is based on a denial of procedural due process. "Procedural due process . . . is a constitutional right which applies to individuals in an adjudicative or quasi-judicial proceeding." *County of Fairfax v. Southern Ironworks, Inc.*, 242 Va. 435 (1991). The building code is enforced pursuant to the police power of the city; however, "a statute premised upon the police power 'is subject to the constitutional guarantee that no property shall be taken without due process of law and where the police power conflicts with the Constitution, the latter is

supreme'." *School Board of the City of Norfolk v. U.S. Gypsum*, 234 Va. 32, 39, 360 S.E.2d 325 (1987), *quoting with approval Board of Supervisors v. Carper*, 200 Va. 653, 660, 107 S.E.2d 390 (1959).

Before a governmental entity like the City may take action directly affecting a property interest, procedural due process requires that it give the owners of the property an opportunity to be heard. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 71 L. Ed. 2d 265, 273 (1982) (termination of employment hearing). In a building demolition case, the required notice must be given prior to the termination of the property right in question. *Hagen v. Traill County*, 708 F.2d 347, 348 (8th Cir. 1983). The city's reliance on *Hagen* is misplaced because Hagen was the sole owner of the property in question, and he was given oral and written notice to abate the hazards or the property would be destroyed; therefore, the court held that Hagen had been afforded due process. In this case, two of the three persons owning an interest in the property were not given notice of the proposed action by the city.

The city claims that the August 17, 1989, letter from Weber to McIntosh complied with the notice requirements of § 107.3 of the statute because notice to the owner was given to the life tenant pursuant to the statutory definition of "owner" in Virginia Code § 36-97(15), and the life tenant owns one of the principal lesser estates in property and is entitled to the exclusive current possessory interest in the property. *See* 7A Michie's Jurisprudence, *Estates*, sect. 22 (1989). To so limit the definition of owner where due process is required would result in a constitutionally flawed procedure when it is applied in the context of the demolition of improvements to real property. Statutes giving building officials the authority to condemn structures which endanger public safety must respect the right of the property owner to due process of law. *See* 13 Am. Jur. 2d, *Buildings*, § 42; and Annotation, *Validity and Construction of Statute or Ordinance Providing for Repair or Destruction of Residential Building by Public Authorities at Owner's Expense*, 43 A.L.R. 3d 916. The statutes in question must be construed and applied to afford the owners of the property notice of the proposed demolition and an opportunity for a hearing to contest the decision of the building official to raze the structure, and *arguendo*, to show that the

structure could be brought into conformity with the building code. *See, City of Alton v. City of Carroll,* 109 Ill. App. 3d 156, 440 N.E.2d 290 (1982); *Tingle v. Wichita,* 211 Kan. 119, 505 P.2d 717 (1973); *Johnson v. City of Paducah,* 512 S.W.2d 514 (Ky. 1974); and *Horne v. Cordele,* 140 Ga. App. 127, 230 S.E.2d 333 (1976).

The litmus inquiry in this case is whether the notice given by the city complied with constitutional procedural due process requirements. "The notice which is an elementary and fundamental requirement of due process in any proceeding is notice reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." 16 Am. Jur. 2d *Constitutional Law* § 829. Due process does not prescribe any particular form of notice, and mailing by certified mail has been found to be a reasonable form of substituted notice in many instances. *Nelson v. New York,* 352 U.S. 103, 1 L. Ed. 2d 171 (1956), and *Traveler's Health Association v. Virginia,* 339 U.S. 643, 94 L. Ed. 1154 (1950). The plaintiff was not given any notice by the city in this case of the proposed demolition.

The plaintiff as the owner of the remainderman interest in the property was entitled to notice of the proposed demolition of the property. As noted in 16 Am. Jur. 2d *Constitutional Law,* § 835:

> Persons entitled to notice of a proceeding are, speaking generally, those who are to be affected by a judgment or order therein. Judicial action enforcing a judgment against a person or property of one who is not a party to the proceedings in which a judgment was entered, and was not made a party by service of process, is not that due process which the 5th and 14th Amendments require.

The Supreme Court of the United States was recently given the opportunity to reaffirm the fundamental constitution right to notice before property interests may be adversely affected in *Tulsa Professional Collection Services, Inc.,* 485 U.S. 478, 99 L. Ed. 2d 565, 574-575 (1988), in which it stated:

*Mullane v. Central Hanover Bank & Trust Co., supra*, at 314, 94 L. Ed. 865, 70 S. Ct. 652, established that state action affecting property must generally be accompanied by notification of that action: "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections . . . ."

The Court's most recent decision in this area is *Mennonite, supra*, which involved the sale of real property for delinquent taxes . . . . In *Mennonite*, a mortgagee of property that had been sold and on which the redemption period had run complained that the State's failure to provide it with actual notice of these proceedings violated due process. The Court agreed holding that "actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable.

There is no difference between a remainderman and a mortgagee with respect to their entitlement to notice, so the plaintiff was entitled to notice under the facts of this case. Courts and administrative agencies which intend to take irreparable action against an individual property are required to give notice to each owner of a property interest in that property. *See, Klimko v. Virginia Employment Commission*, 216 Va. 750, 222 S.E.2d 559 (1976); *In re Tax Claim Bureau*, 53 Pa. Commw. 423, 419 A.2d 206 (1980); and *Wilson v. Bishop*, 82 Ill. 2d 364, 412 N.E.2d 522 (1980). The statutory definition of owner set forth in Va. Code § 36-97(15) is not a procedural due process formula which may be used when action is taken which may result in the substantial taking of a property interest by the building code official. Notice in strict compliance with § 36-97(15) may be sufficient

in some instances where minor violations of the building code are concerned or an emergency exists, neither of which conditions would appear to be present in this case. However, in situations like the case at bar, where the demolition of a residential structure is concerned, *all* of the property owners were entitled to be heard and must be notified before the property is demolished. Therefore, in the context of the destruction of the residence in this case, the procedure applied by the city violated the procedural due process requirements of the state and federal constitutions.

The plaintiff's remedy in this case would appear to be an inverse condemnation action against the city. *Yates v. Jamison*, 782 F.2d 1182 (4th Cir. 1986) (applying North Carolina law to a building demolition without notice to the owner). Accordingly, further proceedings in this case shall be in accordance with Virginia Code § 8.01-187.

### III. *Decision*

For the foregoing reasons:

The Demurrer and Special Plea of the City to the Amended Motion for Judgment are denied;

The Demurrer of the defendant Weber is sustained for the reasons stated in the Court's opinion of October 2, 1991.