Theron Northrup, Derwin Northrup, Carl North-
rup, Irene Fish and Lucille Yardman, Petitioners
*v.* Pennsylvania Game Commission, Respondent.

Argued January 31, 1983, before Judges BLATT,
MACPHAIL and DOYLE, sitting as a panel of three.

*Michael J. Dowd, Dowd and Kocsis,* for petitioners.

*William R. Pouss,* Assistant Counsel, for respon-
dent.

OPINION BY JUDGE BLATT, April 12, 1983:

The petitioners, who are heirs of one Llewellington Northrup, appeal a decision of the Board of Property (Board) denying their request for equitable relief in this matter concerning the ownership of six tracts of land in Bradford County, Pennsylvania.

The pertinent facts, as found by the Board, are as follows. Members of the Northrup family owned the tracts in question until the land was sold at tax sale on December 18, 1941. Taxes on the property had been paid by Carrie Northrup, Llewellington's widow,[1] until 1934. The 1935, 1936, and 1937 assessments remained unpaid. Commencing on April 12, 1941, the subject property was advertised in two newspapers of general circulation in Bradford County, the notice stating that the land, listed in the name of the Llewellington Northrup Estate, was to be sold for non-payment of taxes. Written notice was sent to the Estate, and although no one lived on the land at this time, a receipt for the written notice was signed by one Cedric Northrup, a cousin of the petitioners, who lived approximately one mile down the road from the subject property. The taxes remained unpaid and the property was sold to R.G.C. Jones whose tax deed was acknowledged in open court on May 7, 1942 subject to any right of redemption. The tax deed was subsequently recorded. Jones later deeded the property to the Pennsylvania Game Commission (Commission), the respondents in this action.

Our scope of review, as statutorily mandated, requires us to affirm the Board's adjudication unless the adjudication is in violation of the petitioners' constitutional rights, or it is not in accordance with law, or if any finding of fact made by the Board and necessary to support its adjudication is not supported by sub-

---

[1] The taxes for the property were assessed to the Llewellington Northrup Estate.

stantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704.

The petitioners here alleged that there were deficiencies in the tax sale procedure, particularly as to the notice requirements, and that the sale should be voided with title restored in the petitioners. They also requested that the Commission be enjoined from asserting any title to the land or from impeaching the petitioners' title.

We begin by noting that, when the tax sale was confirmed and acknowledged in open court, the sale acquired a presumptive validity. This rule is based on the presumption that the acts of public officers are regular. *Shoemaker v. Tax Claim Bureau*, 27 Pa. Commonwealth Ct. 211, 365 A.2d 1320 (1976). Moreover, our Supreme Court has stated that this presumption is particularly suitable in tax sales cases. *Hughes v. Chaplin,* 389 Pa. 93, 132 A.2d 200 (1957). Defects in the notice requirements, however, if sufficiently irregular, may render the tax sale void, as required by the rule that the notice provisions of a tax sale statute must be strictly construed. *See Patterson v. Oakes,* 260 Pa. Superior Ct. 415, 394 A.2d 995 (1978). In this matter, however, even if we were to assume for the sake of argument that the notice given to Cedric Northrup was insufficient, the Board clearly found that all of the petitioners received *actual* notice of the sale at various times between 1943 and 1949. Yet, it was not until 1979, over 30 years after being in receipt of actual knowledge that the realty had been sold, that the petitioners initiated any legal action. We agree with the Commission that the petitioners have slept on their rights for too long, and must now be said to have waived whatever rights they may have had, if any, in this land.

This principle has long been accepted in this Commonwealth. In *Foulk v. Brown,* 2 Watts 209, 215 (1834) it was written:

> No person ought to be permitted to lie by whilst transactions can be fairly investigated and justly determined until time has involved them in uncertainty and obscurity, and then ask for an inquiry.

And, in *Bunting v. Young*, 5 Watts & Serg. 188 (1843), our Supreme Court held that irregularities in a tax sale could be waived by the previous owners.

> And where the warrantee or owner of unseated land, after an irregular sale made of it on account of taxes in arrears upon it, lies by for twenty-one years, without making any claim to it by paying the taxes assessed, or exercising acts of ownership on it, but suffers the purchaser, his heirs or assigns, at the tax sale, *it may be presumed that he has waived his right to object to the sale;* or, in other words, as was said in Foust v. Ross, that he has abandoned his right to the land in favour of the purchaser at tax sale. (Emphasis added.)

*Id.* at 197. These principles were reaffirmed more recently in *Stolarick v. Stolarick,* 241 Pa. Superior Ct. 498, 363 A.2d 793 (1976) wherein the Superior Court held that equity will not lend its aid to one who has slept on his rights until the original transaction is obscured by lapse of years. The *Stolarick* court noted that, where a party who has the right to set aside a transaction stands by and sees another dealing with the property in a manner inconsistent with his alleged claim and does not object, substantial delay will bar the equitable proceeding.[2] Moreover, the burden of prompt action falls on the party out of possession. *Id.*

We must, therefore, affirm the Board's order.

---

[2] "Equity aids the vigilant, not those who slumber upon their rights." *Riley v. Boynton Coal Co.*, 305 Pa. 364, 368, 157 A. 794, 795 (1931).

## ORDER

AND NOW, this 12th day of April, 1983, the order of the Board of Property in the above-captioned matter is hereby affirmed.