Alan GOLDSTEIN, Plaintiff,

v.

The UNITED STATES, Defendant,

and

J. Nevin White Lumber Company,

and

Chicago Title Insurance Company
of Maryland, Third–Party
Defendants.

No. 270–89L.

United States Court of Federal Claims.

Feb. 24, 1993.

Reissued for Publication June 10, 1994.

458

Norman M. Yoffe, Harrisburg, PA, for plaintiff.

Gregory D. Page, Justice Dept., Environmental and Natural Resources Div., Washington, DC, for defendant. John E. Slike, Camp Hill, PA, for third-party defendant J. Nevin White Lumber Co., and James Bruce Davis, Arlington, VA, for third-party defendant Chicago Title Ins. Co. of Md.

## OPINION

ROBINSON, Judge.

This matter is before the court upon the parties' cross-motions for summary judgment pursuant to RCFC 56. Plaintiff claims that defendant violated the Fifth Amendment to the Constitution when, as·a result of a condemnation proceeding involving a tract of land in Pennsylvania, it took plaintiff's property without compensation. J. Nevin White Lumber Co. (White), identified in the condemnation proceeding as the record owner of the land, and Chicago Title Insurance Co. of Maryland, White's title insurer, are third-party defendants. After careful review of the parties' pleadings and arguments, the court finds that plaintiff's claim must be denied. The court's reasoning follows.

### Factual Background

On June 20, 1986, the Government filed a complaint in condemnation in the United States District Court for the Middle District of Pennsylvania, Civil No. CV–86–0840, for approximately 583.59 acres in Dauphin County, Pennsylvania, identified as "Tract No. 359–01 (J. Nevin White Lumber Company, et al.)." In that proceeding, White was identified as the owner of the land. The Government's condemnation sought title to the property for use as part of the Appalachian National Scenic Trail system, which extends through Dauphin County.

The parties do not contest that White's chain of title to most, if not all, of the property is uninterrupted, and that White has paid all taxes assessed upon the tax tract since acquiring the property from Fred N. Lyons.[1]

1. Thomas Elder conveyed title in 1854 to Lewis Heck. The Estate of Lewis Heck was partitioned and the premises awarded to his daughter Marianne H. Donaldson. In 1896, Donaldson conveyed the premises to J. Lewis Heck. In 1904, J. Lewis Heck conveyed the tract to John Creswell, who conveyed the property to Harvey Creswell in 1906. In 1907, Harvey Creswell conveyed the property to Cora Zimmerman, and Zimmerman conveyed the property to Fay Bailey in 1916. In

When the Government condemned the property, White was the only owner of record who was lawfully paying taxes for the tax tract (except possibly for a parcel of approximately 13–19 acres in the tract which may or may not have been devised by one of the intermediate owners).[2]

Defendant paid White $727,500 for the condemned land based upon White's recorded deed to the property. White then sought title insurance from Chicago Title, which failed to discover plaintiff's tax deed.

Plaintiff maintains, however, that he owns a property interest in approximately 141.6861 acres of the condemned tract, by virtue of a deed dated February 4, 1986, from the Tax Claim Bureau of Dauphin County (Tax Claim Bureau or Bureau).

Plaintiff's chain of title, he alleges, began in 1965 with a tax sale deed issued to Carl Coleman to a parcel described as "Parcel No. 43–3–1" (the tax tract).[3] In the Coleman deed, the Bureau identified "Thomas Elder" as the owner of the tax tract before the conveyance to Coleman in 1965. The parties agree, however, that Thomas Elder did not then own and could not have conveyed title to the property to anyone in 1965 because he had been dead for many years. In fact, Thomas Elder actually conveyed title to the property in 1854, approximately 111 years before Coleman's acquisition of the tax sale deed. Further, the Dauphin County land records evidence that prior to his death, Thomas Elder never reacquired any title to the tax tract.

After obtaining his tax deed, Coleman failed to pay taxes on the property. Subsequently, on November 4, 1985, the tax tract was, again, auctioned at a tax delinquency sale. Plaintiff purchased the property for $170.91. On January 27, 1986, the sale was confirmed by the Court of Common Pleas of Dauphin County, and, on February 4, 1986, plaintiff was issued a tax deed similar to Coleman's from the Bureau as evidence of his title. The property described in plaintiff's tax sale deed is exactly the same as that described in Coleman's deed—"Parcel No. 43–3–1."

Plaintiff admits that he failed to conduct a title search of the tax tract before purchasing it. Indeed, such a search was not conducted until approximately two years after plaintiff's purchase. White notes that it neither received official notice nor actual knowledge or notice of the tax sale to plaintiff prior to the commencement of this action. Furthermore, White had no notice that plaintiff subsequently paid taxes on the tax tract, explaining why plaintiff was not notified of the condemnation proceeding that resulted in a remittal of the entire just compensation award of $727,500 to White, the record owner of the property.

On March 5, 1991, defendant filed a motion for summary judgment. On April 5, 1991, plaintiff filed a cross-motion for summary judgment.

### Contentions of the Parties

Plaintiff claims that the land he purchased in 1985 includes part of the land the Govern-

1938, Bailey conveyed the tract to G.L. Bendigo, who conveyed it to W.L. Gaugler in 1947. In 1952, Gaugler conveyed the property to P.W. Fetterhoff, and Fetterhoff conveyed the tract to Fred N. Lyons by deed dated January 21, 1965. By deed dated February 15, 1967, Lyons conveyed the tract to J. Nevin White.

**2.** The property actually consists of approximately 159 acres. In the conveyance of this property from Thomas Elder to Lewis Heck, and from Lewis Heck to J. Lewis Heck, the property is described as containing either 159 or 153 acres. When J. Lewis Heck conveyed the property in 1904 his deed to Creswell only referred to 140 acres, which is the basis for the theory that a parcel of approximately 19 acres in the tract was never subsequently conveyed by Heck or his

heirs. However, examination of the records reveals that Creswell owned the entire tax tract because the monument and boundary references in his deed, which describe the boundaries of adjacent property owners, describe a tract of 159 acres, not 140 acres.

**3.** Plaintiff contends that the tax sale deed he received created a new chain of title in him; therefore, he maintains, it is unnecessary and improper to refer to the Coleman deed as part of his "chain of title." The court, however, is convinced that reference to the Coleman deed is imperative to explaining the factual background of this case; although, the precise characterization of the Coleman deed is insignificant to the outcome of this case.

ment condemned in 1986.[4] He contends that his tax deed created a new chain of title in him, which is valid and no longer subject to any challenge in Pennsylvania under applicable legal precedents. In this regard, plaintiff admits that White never received the notice of the tax sale required by the Pennsylvania Real Estate Tax Law, Act of July 7, 1947, P.L. 1368, *as amended* PA.STAT.ANN. tit. 72, §§ 5860.101–5860.803 (the Tax Sale Law). Plaintiff contends, however, that the tax sale was not "void" but "voidable," and that White had a period of six months to have the tax sale set aside. Plaintiff therefore concludes that, since the six-month period elapsed without any action by White, the tax sale must be upheld by this court. Plaintiff maintains that his property was taken in violation of the Fifth Amendment, and that he is entitled to an award of $109,053 as his share of the proceeds from the Government's prior condemnation action.

Defendant asserts that both plaintiff's and Coleman's tax deeds are void, not voidable, as a matter of Pennsylvania law, because the Bureau failed to notify the record owner[5] of the tax sale to Coleman and failed to notify White of the tax sale to plaintiff.[6] Defendant also asserts that the tax sale, which was subject to the Tax Sale Law, is distinct from and does not rise to the level of a "judicial" sale, which would be subject to a six-month statute of limitations.

### DISCUSSION

■ Summary judgment is appropriate when "there is no genuine issue as to any material fact" so that the moving party is "entitled to judgment as a matter of law." RCFC 56(c). In evaluating a motion for summary judgment, any doubt as to whether a genuine issue of material fact exists must be resolved in favor of the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142

(1970); *Campbell v. United States*, 2 Cl.Ct. 247, 249 (1983). A genuine issue of material fact is one that would change the outcome of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–81, 106 S.Ct. 2505, 2509–28, 91 L.Ed.2d 202 (1986).

■ When the moving party has met its burden, the non-moving party must come forward with specific facts showing that a genuine issue for trial exists, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), and the non-moving party may not discharge its burden by cryptic, conclusory, or generalized responses. *See Willetts v. Ford Motor Co.*, 583 F.2d 852, 856 (6th Cir.1978); *Tunnell v. Wiley*, 514 F.2d 971, 976 (3d Cir.1975). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356 (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968)).

The parties are in agreement that there are no genuine material issues in dispute. After reviewing the pleadings and the parties' oral arguments, this court agrees and, therefore, finds that the case is a proper one for disposition upon the parties' pending motions.

■ The Fifth Amendment to the United States Constitution states, "[No] private property [shall] be taken for public use, without just compensation." It is undisputed that the Government condemned the land at issue for public use. It is also undisputed that defendant has failed to compensate plaintiff for the taking. The central issue in this case, therefore, is whether plaintiff owned an interest in the property when it was condemned by defendant. The court must look to the law of Pennsylvania to

---

**4.** The tax tract consists of approximately 250 acres. The portion of the tax tract condemned by the Government is 141.6861 acres.

**5.** The exact date of the 1965 tax sale to Coleman is not in the record before the court. Depending on this date, either P.W. Fetterhoff or Fred N. Lyons was the record owner of the property.

**6.** Pursuant to the Government's third-party complaint, both White and Chicago Title would have liability to defendant if plaintiff were to prevail in the instant case, although Chicago Title's exposure is limited to the face amount of its policy.

resolve this issue. *See Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972) ("Property interests ... are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."); *Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 1001, 104 S.Ct. 2862, 2871, 81 L.Ed.2d 815 (1984).

The Pennsylvania Tax Sale Law was enacted for dual purposes: first, it protects local governments against delinquent taxpayers who are guilty of willful, persistent, and long-standing tax delinquencies; and, second, it protects the delinquent taxpayer against the deprivation of his property without due process of law. *Hess v. Westerwick,* 366 Pa. 90, 76 A.2d 745, 748 (1950); *Huhn v. Chester County,* 16 Pa.Cmwlth. 18, 328 A.2d 906, 908 (1974).

The Tax Sale Law provides that the Bureau must notify delinquent property owners of the tax delinquency and impending tax sale. Initially, the Bureau is required to notify property owners of their tax delinquency by certified mail and give them at least one year to redeem their property before it is "advertised for and exposed to sale...." PA.STAT.ANN. tit. 72, § 5860.-308(a). Then, the county must alert the owners that the Bureau intends to sell their property at a tax sale by three separate types of notice, as follows: (1) naming them thirty days before the tax sale, in two newspapers of general circulation in the county, thereby informing those owners of the time, place, and purpose of that sale; (2) notifying each owner of record by certified mail, thirty days before the tax sale, of the time, place, and purpose of the sale; and (3) posting a warning on the property, ten days before the tax sale, that the county intends to sell it for delinquent taxes. PA.STAT.ANN. tit. 72, § 5860.602.

In *Hess v. Westerwick,* the Pennsylvania Supreme Court explained that Bureau compliance with these notice provisions is essential to afford individuals the due process of law guaranteed by the United States and Pennsylvania constitutions. *Hess,* 76 A.2d at 748. The court stated, "Without due process of law the right of private property cannot be said to exist.... '[D]ue process of law' inhibits the taking of one man's property and giving it to another ... *without notice* or an opportunity for a hearing." *Id.; see Schroeder v. New York,* 371 U.S. 208, 212, 83 S.Ct. 279, 282, 9 L.Ed.2d 255 (1962) ("The requirement that parties be notified of proceedings affecting their legally protected interests is ... a vital corollary to one of the most fundamental requisites of due process—the right to be heard."); *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). The court added that, since the Tax Sale Law is designed to enhance the validity of tax deeds, state taxing authorities have a responsibility to see that their oversight or neglect does not result in innocent owners being deprived of valuable property. *Hess,* 76 A.2d at 748.

■ Thus, the notice provisions of Pennsylvania's Tax Sale Law are construed strictly by the Pennsylvania courts to guard against the deprivation of property without due process of law. *In re Exceptions to Sale of Property of Molchan,* 94 Pa.Cmwlth. 423, 503 A.2d 1051, 1054 (1986). The Bureau must comply with *each* of the notice provisions to effect a valid tax sale. *Daubenspeck Appeal,* 48 Pa.Cmwlth. 612, 411 A.2d 837, 838 (1980); *Casanta v. Clearfield County Tax Claim,* 62 Pa.Cmwlth. 216, 435 A.2d 681, 682 (1981); *Financial Management Professional Corp. v. Tax Claim Bureau,* 121 Pa.Cmwlth. 205, 550 A.2d 601, 603 (1988). Where any of the forms of notice is missing, "the tax sale is void." *Molchan,* 503 A.2d at 1054.

■ Based upon the record before this court, it cannot be disputed that, in 1965, Thomas Elder did not own the tax tract and had not owned the property since his conveyance of title in 1854. The Bureau inexplicably misidentified him as the owner in 1965 and compounded this error in determining that he had been delinquent. Further, none of the notices required by state law were

executed.[7] The Bureau's erroneous assessment of ownership precipitated its failure to adhere to constitutional and state statutory notice requirements and procedures. Thus, the Bureau's conveyance of the property to Coleman at a tax sale was invalid.

 Nevertheless, plaintiff contends that the invalidity of the Coleman deed is immaterial, and that a new chain of title came into being once plaintiff paid $170.91 for the property, divesting White of legal title. Plaintiff overlooks, however, the Bureau's constitutional obligation to notify White of the November 1985 tax sale. *See Teslovich v. Johnson*, 486 Pa. 622, 406 A.2d 1374, 1378 (1979). White received no notice of the tax sale pursuant to state law.[8] All of the Bureau's actions and notices (the tax assessment and return of delinquent taxes, the service of notice of tax lien, advertisement of notice of tax lien, posting of notice of tax lien, service of upset tax notice, advertising of upset tax sale, posting of upset tax sale) were made in the name "Coleman." The court agrees with plaintiff that the validity of the tax sale to plaintiff is independent of the tax sale to Coleman; however, the November 1985 tax sale to plaintiff is invalid since the Bureau failed to notify White of the sale.

This court holds that plaintiff has established no valid chain of title and no supportable claim to one, due to the foregoing defects in the Bureau's tax sale procedures. Whether plaintiff was erroneously assessed and, subsequently, paid taxes on the tax tract is irrelevant. By merely paying taxes on the tax tract, plaintiff cannot establish a title to the property superior to that of the record owner who has also paid all assessed taxes, received no notice of the tax sale, and had no opportunity to protect its interests in the property. To hold otherwise would be "an outstanding reproach of our system of justice," since White by such holding would be deprived of its property without due process. *Hess*, 76 A.2d at 748. It is also irrelevant whether plaintiff may have a valid claim against the County of Dauphin for recovery of the purchase price and the taxes he has paid.

 Plaintiff next contends that defendant's challenge of the tax sale, at most, makes the sale voidable, not void. However, this contention is unsupported by available records and persuasive legal precedent. Plaintiff relies heavily upon the case of *Northrup v. Pennsylvania Game Commission*, 73 Pa.Cmwlth. 389, 458 A.2d 308 (1983), wherein the court upheld a tax sale where notice was defective. The property at issue in that case was sold at a tax sale in 1941. Although the notice provisions of the statute then in force were not satisfied, the record owners received *actual* notice several times between 1943 and 1949. *Id.* at 310. The heirs of the record owner brought suit, challenging the validity of the tax sale, in 1979, over thirty years after receipt of actual notice. *Id.*

7. The evidence shows that Fred N. Lyons received title to the property from P.W. Fetterhoff by deed dated January 21, 1965. Lyons, in turn, conveyed title to White by deed dated February 15, 1967. Plaintiff does not dispute that neither Fetterhoff nor Lyons, who were the record owners during the period 1963 to 1967, were notified by the County of Dauphin of the tax sale to Coleman. In fact, no one can, now, prove the contrary because of Dauphin County's loss of pertinent tax sale records from 1965. The burden of proving compliance with the notice provisions rests on Dauphin County's tax claim bureau. *Ali v. Montgomery Co. Tax Claim Bureau*, 124 Pa.Cmwlth. 557, 557 A.2d 35, 36–37 (1989).

8. As the purchaser at tax sale who is attempting to uphold the validity of that sale, plaintiff has the burden of proving compliance with the notice provisions of state law. *Dolphin Serv. Corp. v. Montgomery County Tax Claim Bureau*, 125 Pa. Cmwlth. 220, 557 A.2d 38, 39 (1989), *appeal denied*, 575 A.2d 117 *and appeal denied sub. nom. In re 850 Modena St., Inc.*, 525 Pa. 588, 575 A.2d 118 (1990). White's declarations that the Bureau never notified him or his corporation, orally or in writing, of the scheduled tax sale, and that the Bureau failed to post the property with notice of such sale stands unrebutted. There is no affidavit of posting in the county's records. Such an affidavit is customarily retained by the county. A memorandum in the county's files suggests that some posting may have taken place; however, this is insufficient to prove compliance with the requirement of an affidavit of posting made by a duly authorized official. Further, the memorandum fails to mention the requirement of publication in two county newspapers and notification of the owner by certified mail. Dauphin County has no other records relating to notice to White by publication, posting, or otherwise.

The *Northrup* court recognized that "[d]efects in the notice requirements ... may render [a] tax sale void, as required by the rule that the notice provisions of a tax sale statute must be strictly construed." *Northrup*, 458 A.2d at 310. In spite of this, the court upheld the validity of the tax sale, because the heirs had "slept on their rights for too long, and ... waived whatever rights they ... had in [the] land." *Id.* The court relied on an 1843 Pennsylvania Supreme Court decision holding that irregularities in a tax sale could be waived by the record owners. *Id.* (citing *Bunting v. Young*, 5 Watts & Serg. 188 (1843)).

*Northrup* is distinguishable because the defendant in that case, failed to contest the validity of the tax deed for over thirty years; whereas, White and the Government, in this litigation, have vigorously contested the validity of plaintiff's tax deed upon becoming aware of plaintiff's title claim. In any case, however, this court would be reluctant to follow the *Northrup* decision. The reasoning in that case is faulty and even incongruous—initially suggesting that the tax deed is void and then concluding to uphold it. Furthermore, reliance by the *Northrup* court on *Bunting* is misplaced. That decision in *Bunting* is contrary to *Hess* and its progeny, as well as the constitutional provisions that are the foundation for the decision in *Hess*. Available records demonstrate that both the Coleman deed and plaintiff's deed are void as a matter of Pennsylvania law. *Ali v. Montgomery Co. Tax Claim Bureau*, 124 Pa. Cmwlth. 557, 557 A.2d 35, 37 (1989). Accordingly, this court finds that plaintiff's tax sale deed is invalid or void, not voidable, under the Pennsylvania Tax Sale Law.

■ Finally, plaintiff attempts to place the tax sale within the category of a "judicial" sale, because of the six-month state statute of limitations that applies to attacks upon the validity of such sales. Plaintiff asserts that any attack upon the validity of the tax sale to him, which was certified by the court of common pleas, was completely barred after either July 27, 1986, six months after the confirmation of the tax sale, or August 4, 1986, six months after the date of the tax deed. However, under Pennsylvania law, as well as under most if not all other state laws, a "tax sale" is distinct from a "judicial sale." Judicial sales commonly occur as a result of process executions, mortgage foreclosures, petitions for sale for division, or estate sales. A judicial sale is one "which must be based upon an order or a decree [of court] directing the sale." *In re Acchione*, 425 Pa. 23, 227 A.2d 816, 823 (1967). Judicial sales are distinct from *judicial assent* to a sale because of a statutory requirement for that assent, such as the requirements of the Pennsylvania Tax Sale Law. *Id.* A tax sale is not *directed* by court order after an evidentiary proceeding before a court. In short, the Pennsylvania court's confirmation or certification of the tax sale to plaintiff was merely that court's assent to the sale, because of the statutory requirements of the Pennsylvania Real Estate Tax Sale Law.[9] Accordingly, the court finds that, under Pennsylvania law, the tax sale to plaintiff was not a judicial sale with respect to which a six-month statute of limitations could apply.[10]

### CONCLUSION

■ For the foregoing reasons, the court finds that plaintiff's tax deed is void under applicable Pennsylvania law and that plaintiff, notwithstanding its tax deed, has no valid title, much less a superior title, to the property. Therefore, it follows that on the record

---

9. The Tax Sale Law, itself, recognizes a difference between a tax sale and a judicial sale. In 1986, by the Act of July 3, 1986, P.L. 351, No. 81, § 33, Pa.Stat.Ann. tit. 72, § 5860.610, a new subarticle was added to the Real Estate Tax Sale Law, identified as "(b) Judicial Sale." The ensuing sections provide a separate and distinct procedure for the sale of property where there were no bids at the tax sale. The provisions provide for a rule to show cause, service of the rule, a hearing, and an order for a judicial sale. The sale in this case was not pursuant to the judicial sale provisions of the Real Estate Tax Sale Law, but was a sale by the Tax Claim Bureau pursuant to the provisions governing its sales, beginning in § 601. Act of July 7, 1947, P.L. 1386, Art. VI, § 601, *et seq.*, as amended, Pa.Stat.Ann. tit. 72, §§ 5860.601 *et seq.*

10. Even if the sale to plaintiff is properly classed as a "judicial sale," the six-month requirement would likely violate due process requirements.

before this court, plaintiff has failed to establish that it has a legally valid and protected property interest in the condemned tax tract which would entitle him to compensation under the Fifth Amendment to the Constitution. Accordingly, plaintiff's complaint seeking recovery of a portion of the proceeds from the Government's condemnation must fail.[11]

Defendant's Motion for Summary Judgment is granted and plaintiff's Cross Motion for Summary Judgment is denied. The Clerk is directed to dismiss the complaint, as well as third-party complaints against J. Nevin White Lumber Company and Chicago Title Insurance Company of Maryland, with prejudice. No costs.

---

**11.** Defendant's brief characterizes plaintiff's arguments as "metaphysical," "tortuous," "incredible," "without a colorable basis in law," and "frivolous." Such characterizations are unnecessary and actually detract from defendant's case. Moreover, the court cannot agree with the import of these characterizations because plaintiff's position has some, albeit weak, legal precedent to support it. Also, defendant argues as follows:

> [P]laintiff has not shown this court, with case or other authority, that a six-month statute of limitations in Pennsylvania prevents White or the United States from protecting their interests in *this* court. That is because there is no such authority. Plainly, White and federal defendant may protect their interests in this court by demonstrating that plaintiff does not have a property right to the tax tract. *Had plaintiff consulted 28 U.S.C. § 2501, he also would have learned that the statute of limitations in this court is six years, not six months.*

Federal Defendant's Reply to Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment at 7 (second emphasis added).

Thus, if the court understands defendant's argument, defendant has erroneously concluded that a federal statute is the appropriate statute of limitations for contesting a tax sale effected under the Tax Sale Law of Pennsylvania. This argument is surprising, since it fails to grasp the very basic distinction between state and federal law. The true ownership of the tax tract is a matter of state, not federal, law.

One final observation should be made. Although the court finds that, under Pennsylvania law, the tax deed to plaintiff is void, the Court of Federal Claims is without authority to direct the Court of Common Pleas of Dauphin County to set aside the tax sale and void plaintiff's tax deed. Therefore, an action by defendant to set aside the tax sale, might have merit because it could prevent future litigation over title to the tax tract in a Pennsylvania court.